ALFRED WINSOR & another *vs*. ARTHUR MILLS.

Suffolk.    June 2, 3, 1892. — November 22, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Agreement to hold Land in Trust — Restraint on Alienation — Perpetuity —
Equitable Interests in Land — Sale and Account.*

The enforcement of an agreement which provides that each of the parties has an
estate in land to be held for an indefinite period, and that no part of the land is
to be sold without the consent of both, might hold real estate beyond the power
of transfer by the owner for many generations. The agreement violates the rule
against perpetuities and is void.

An agreement which declared that certain land should be held in trust for the ben-
efit of the parties thereto, provided that one of them should have the right to
purchase a portion of the land at a certain price at any time before it was other-
wise sold or disposed of in accordance with the agreement. *Held*, that this was
a provision for the possible creation of an estate in lands at some time in the
distant future, and clearly came within the rule against perpetuities.

The statement sometimes suggested as a reason for the rule against perpetuities,
that it is impossible for the owners of the estate to convey it, and that the estate
is rendered inalienable " though all mankind should join in the conveyance," is
not always accurate. The mere fact that a contingent interest may be released
by persons in being, and that a good title may thus be made, is not enough to
take the case out of the rule, if the estate cannot be alienated by those having
vested interests in it, because a possible future interest is created which may
not vest within the time fixed by law.

An agreement whereby A. held land for the benefit of A. and B. was declared to
come within the rule against perpetuities in that it provided for the holding of
the land for an indefinite period, so that it could not be disposed of without the
consent of both A. and B. *Held*, that the provision of the purchase of a portion
of the land by one of them, if he should wish to buy, was a part of the general
scheme to restrain alienation and create a perpetuity.

An agreement came within the rule against perpetuities in that it provided that A.
should hold land for A. and B. for an indefinite period. *Held*, that that part of
the agreement which was valid left the executors of A. holders of the land under
a trust which could be executed only by a sale; that to the extent of creating
equitable interests in common in land the agreement was good; that the court
had jurisdiction to enforce and regulate the execution of the trust, and that the
purpose of the parties could most nearly be accomplished by a sale of the prop-
erty, the taking of an account, and a division of the proceeds between them
according to their respective interests. A majority of the court, however, were
of opinion that a sale should not be ordered on the application of the executors
of A. unless they first gave B. an opportunity, as provided in the eighth article
of the agreement, to purchase a certain strip of land at a certain price, and that
while this provision of the contract was not enforceable as giving a right or

interest in the land, it would be inequitable to give the executors of A. relief unless they were willing to perform the agreement of their testator in this particular, and, so far as possible, to carry out the general purpose of the parties for the benefit of the defendant. FIELD, C. J. & KNOWLTON, J. dissenting.

BILL IN EQUITY, filed April 17, 1891, by the executors of and the trustees under the will of Edward S. Philbrick, against Arthur Mills, praying that a piece of land held by the testator in trust for himself and Mills be sold, and the proceeds applied as provided in the trust agreement. Hearing before *Barker*, J.. who entered a decree for the defendant, and reported the case for the determination of the full court. The facts appear in the opinion.

The case was argued at the bar in June, 1892, and afterwards was submitted on the briefs to all the judges.

*J. L. Thorndike*, for the plaintiffs.

*S. Hoar*, ( *W. Sullivan* with him,) for the defendant.

KNOWLTON, J. It appears from the report that Edward S. Philbrick in his lifetime held the land in question under a trust for the benefit of himself and the defendant, in the proportions of two thirds for himself and one third for the defendant. They evidently intended that it should be held for an indefinite period in such a way that it could not be disposed of nor put to a use which might affect the value of their other estates in the neighborhood, without the consent of both of them. If their purpose can be accomplished, and if their respective estates continue to be held by them and their heirs for hundreds of years, this land will all the time remain inalienable, except upon the contingency of their mutually consenting to a sale. If either of them can transfer his equitable interest, it will only be an assignment of a naked right, which will not enable the purchaser to control or use any part of the land itself so long as the trust continues. The principal question in the case is whether this agreement is valid in law or void as rendering the estate inalienable or creating a perpetuity.

Under the agreement, Philbrick was to hold the legal title, while he and the defendant were each to have an equitable estate in fee simple in their respective shares, subject to a limitation which would prevent a disposition or use of the land otherwise than through a sale by the trustee. It is of the

essence of an estate in fee simple that it shall be alienable, and in an instrument creating such an estate a provision that it shall not be sold is void. *Hall* v. *Tufts*, 18 Pick. 455. *Blackstone Bank* v. *Davis*, 21 Pick. 42. *Gleason* v. *Fayerweather*, 4 Gray, 348. *Lane* v. *Lane*, 8 Allen, 350. *Sparhawk* v. *Cloon*, 125 Mass. 263. *In re Rosher*, 26 Ch. D. 801. *In re Dugdale*, 38 Ch. D. 176. *In re Macleay*, L. R. 20 Eq. 186. While some restraints on alienation are allowable, such as a provision forbidding a sale to a particular person, anything amounting to a general restraint is not. In this Commonwealth, as appears by the cases above cited, a general restraint for a short time is held inconsistent with the ownership of an estate in fee simple; but where such a restraint is held permissible for a limited time, it would be deemed unreasonable, and contrary to the policy of the law, to allow it to continue beyond the period fixed by the rule against perpetuities.

In the present case, by the terms of the agreement, each of the parties has an estate in the land, to be held for an indefinite period, and no part of the land is to be sold without the consent of both. All the reasons which lie at the foundation of the rule against perpetuities apply to this agreement. The enforcement of it might hold real estate beyond the power of transfer by the owner for many generations. That a contingency may arise which will make the estate alienable is immaterial. The validity or invalidity of the provision is to be determined in reference to the result if the parties fail to agree, and if each continues to hold his other estate near by. Nor can the apparent reason for desiring to make the arrangement change the effect of an absolute rule of law, which is founded on broad considerations of public policy. If, in an instrument defining the title to real estate, we should give effect to a provision that the land shall be held in fee simple, but shall be inalienable so long as a certain other estate remains the property of the owner and his descendants, it would be impossible for the owner to make it available in the usual and ordinary way. The law will not permit real estate, on which the wealth and prosperity of the country so largely depend, to be excluded from the market in this way during a term which may not end for centuries.

Similar considerations apply to that part of the agreement

which gives the defendant and his heirs and assigns a right to purchase a portion of the land at fifty cents per square foot, at any time before it is otherwise sold or disposed of in accordance with the agreement. This provides for the possible creation of an estate in lands at some time in the distant future, and clearly comes within the rule against perpetuities. *Sears* v. *Russell*, 8 Gray, 86, 98. *Fosdick* v. *Fosdick*, 6 Allen, 41, 43. *Sears* v. *Putnam*, 102 Mass. 5, 7. *Hall* v. *Hall*, 123 Mass. 120, 124.

It has sometimes been suggested as a reason for the rule against perpetuities, that it is impossible for the owners of the estate to convey it, and that the estate is rendered inalienable "though all mankind should join in the conveyance." *Brattle Square Church* v. *Grant*, 3 Gray, 142, 152. This statement is not accurate in reference to many estates which come within the rule. The mere fact that a contingent interest may be released by persons in being, and that a good title may thus be made, is not enough to take the case out of the rule, if the estate cannot be alienated by those having vested interests in it, because a possible future interest is created which may not vest within the time fixed by law. Gray on Perpetuities, §§ 275, 329, 330. *London & Southwestern Railway* v. *Gomm*, 20 Ch. D. 562. A careful examination of the cases will show that this has always been the law in Massachusetts. *Welsh* v. *Foster*, 12 Mass. 93. *Sears* v. *Russell*, 8 Gray, 86, 97, 98. *Fosdick* v. *Fosdick*, 6 Allen, 41. This appears also in the leading case of *Brattle Square Church* v. *Grant*, 3 Gray, 142, in which a single ambiguous or inaccurate expression has sometimes led to a misunderstanding of the law intended to be stated. But it is evident that the learned judge who wrote the opinion, when he spoke of the impossibility of making a conveyance, had reference to a conveyance by those who have vested estates, which are proper subjects of transfer, and not to a release of a contingent interest, which may enable the holders of vested interests to give an indefeasible title. In that case the contingent interest might have been released by John Hancock or his heirs.

Undoubtedly the fact that the holders of vested interests cannot convey tends to make the property practically inalienable, for oftentimes the holders of contingent interests are unknown or cannot be found, and if they are accessible it is not easy to

obtain releases of contingent rights on which it is impossible to fix a value. But the possibility or impossibility of obtaining releases is not the test by which to determine the validity or invalidity of a limitation.

The provision for the purchase of a portion of the land by the defendant, if he should wish to buy, is a part of the general scheme for holding the land for the benefit of the other estates of the respective parties until they should agree to sell it, or until one or the other should dispose of his other estate.* Both parts of the scheme are contrary to the policy of the law, as tending to restrain alienation and to create a perpetuity. We are of opinion that it cannot be enforced.

That part of the agreement which is valid leaves the plaintiffs holders of the land under a trust which can be executed only by a sale. To the extent of creating equitable interests in common in the land, the agreement is good. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 156. The court has jurisdiction to enforce and regulate the execution of the trust, and the purpose of the parties can most nearly be accomplished by a sale of the property, the taking of an account, and a division of the proceeds between them according to their respective interests.

A majority of the court, however, are of opinion that a sale should not be ordered on the application of the plaintiffs unless they first give the defendant an opportunity to purchase the strip referred to in the eighth article of the contract, on the terms therein stated, and that, while this provision of the contract is not enforceable as giving a right or interest in the land, it would be inequitable to give the plaintiffs relief unless they are willing to perform the agreement of their testator in this particular, and, so far as possible, to carry out the general purpose of the parties for the benefit of the defendant. The Chief

---

* This provision is as follows :

" 8. That the said Mills, his heirs and assigns, shall have the right to purchase, at said price of fifty cents per square foot, as much of said land as he or they may desire, adjoining his present estate between Irving and Harvey Streets, and not exceeding twenty feet in width measured from his said present estate, at any time before the same is otherwise sold or disposed of in accordance with this agreement ; and such purchase by said Mills shall not alter the respective rights of said parties in the rest of said land, but said rights shall remain the same as in case of a sale to a third party."

Justice and the writer are unable to concur in this opinion of the majority, as we think that such an agreement, which the court for good reasons will not enforce directly, cannot be enforced indirectly by requiring the plaintiffs to perform it as a condition precedent to a decree for relief to which they would otherwise be entitled.

The case will stand for a further hearing, and, in accordance with the opinion of the majority, there will be a decree for a sale, an account, and a division of the proceeds, only on condition that the plaintiffs first give the defendant an opportunity to purchase the land referred to in the eighth article of the contract, in accordance with the terms of that article, if he desires so to do, within a reasonable time, to be fixed by a single justice. If the plaintiffs refuse to make a sale of this strip to the defendant at his request, the bill is to be dismissed with costs.

*Decree accordingly.*