EASTMAN MARBLE COMPANY & others *vs.* VERMONT MARBLE COMPANY.

Suffolk.  December 8, 9, 1919. — June 22, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction,* Specific performance, *Res judicata. Equity Pleading and Practice,* Plea, Demurrer. *Contract,* Construction, Validity, Performance and breach. *Res Judicata. Perpetuities, Rule against. Restraint on Alienation. Damages,* For breach of contract. *Landlord and Tenant,* Option for purchase or renewal contained in lease. *Words,* "Controversies," "Prosecutions."

The bar of a suit by a judgment of a court of competent jurisdiction in another suit for the same cause of action between the same parties or those in privity with them extends not only to those matters which were pleaded or litigated in the earlier suit but also to those which might have been pleaded or litigated; but, if the later suit is upon a different cause of action, the bar raised by the judgment in the earlier suit is limited to those matters which actually were litigated and determined.

A New York corporation made with two individuals in 1892 a contract in writing purporting to settle controversies between the parties as to certain quarries and land in Vermont and to adjust and fix boundaries.  The individuals afterwards assigned their interest in the contract to a third party, against whom in 1912 the corporation brought a suit in equity in a chancery court of Vermont to restrain him from trespassing and from quarrying upon certain property which the corporation claimed as its own and for an accounting.  The property in controversy in that suit was set off to the defendant's predecessors in the contract of 1892, but nowhere in the pleadings in that suit was any mention made or issue raised as to that contract.  After a final decree for the plaintiff, the defendant by a supplemental bill in the nature of a bill of review sought to reverse the decree by setting up for the first time the contract of 1892, which he alleged was newly discovered evidence, but afterwards he voluntarily testified that the contract was not newly discovered evidence and the chancellor so found and, upon motion by his attorney, the supplemental bill of review was dismissed and a final decree was entered for the corporation.  Subsequently the defendant in the Vermont suit assigned his interest in the contract of 1892 to a corporation which, joining that defendant and his predecessors in title as plaintiffs, brought a suit in equity in Massachusetts against a corporation which was a successor in title to the corporate plaintiff in the Vermont suit, seeking specific performance of the contract of 1892 or damages.  *Held,* that

(1) While the parties in the Massachusetts suit were not the same as those in the Vermont suit, they were their privies so far as concerned the contract of 1892;

(2) The causes of action upon which the two suits rested were different;

(3) The judgment in the Vermont suit was conclusive only upon issues therein actually tried and determined.

In the action in Vermont above described, the predecessor of the defendant in the Massachusetts suit sought to enjoin the predecessor of the corporate plaintiff in the Massachusetts suit from continuing trespass upon certain land. Findings by the Vermont chancellor, who heard the case, were directly contrary to recitals in the contract of 1892 relating to knowledge by the plaintiff in that suit of an option of purchase of an interest in the land in dispute given to the defendant's predecessor in title, purchase by the plaintiff of an interest in that land in defiance of that option, and removal by the defendant's agents of bounds marking the line between the property of the parties. The chancellor also found that the plaintiff in that suit was "a purchaser in good faith for value of the land which it claims to own . . . without notice of right or a claim of defendants," who were plaintiffs in the Massachusetts suit, "or any of their predecessors to any part thereof." Further findings of the chancellor, and the decree based thereon, defined the boundaries between the land of the parties and were of such a character as to make impossible of performance a part, but not all, of the undertakings of the plaintiff in that suit as set out in the contract of 1892. The findings were made before the defendant, by the supplemental bill in the nature of a bill of review had, for the first time, brought the contract of 1892 into the case. There was no issue raised by the pleadings upon which a finding as to the good faith of the plaintiff in that suit in its acquisition of title was made necessary. In the Massachusetts suit, the defendant set up the proceedings and the decree in the Vermont suit in a plea in bar, which contained no recital as to the law of Vermont. *Held,* that

(1) The findings of the chancellor in the Vermont suit as to good faith on the part of the plaintiff there (predecessor of the defendant in the Massachusetts suit) not being pertinent to any issue raised by the pleadings, were not *res judicata* as to any issue raised in the Massachusetts suit;

(2) The differences in locations of boundaries, as described in the alleged contract of 1892 and in the findings by the chancellor in the Vermont suit and the decree based thereon, were not such as of themselves on their face to justify a ruling on the plea as a matter of law that the contract was unenforceable;

(3) While the alleged contract of 1892, if it had been presented in the Vermont suit and there found genuine, would have been decisive in favor of the contentions of the defendant there (the predecessor of the plaintiff in the Massachusetts suit) his failure to offer it in evidence at that trial, when it was not in issue on the pleadings, did not as a matter of law prevent his assignee from relying on it in the Massachusetts suit in so far as its obligations were not at variance nor inconsistent with adjudications in the Vermont suit upon issues there actually raised and determined;

(4) The plea must be adjudged bad as a matter of law.

*Whether,* under modern equity pleading and practice, the earlier rule prevails that the filing of a general plea is a waiver of a general demurrer, was not determined in a suit where a plea was filed "by consent" and "without waiving . . . demurrer," and where the trial judge, stating that he was of opinion that an interlocutory decree should be entered adjudging the plea insufficient and overruling the demurrer, reported the case to this court for determination.

A contract susceptible of two meanings, one lawful and the other not, will be supported rather than defeated, the presumption being, in the absence of something

to show the contrary, that the parties intended to act in accordance with the law.

Recitals in a contract, that it was made with a view to stopping certain "controversies" between the parties as to certain land and certain "prosecutions" which had been "threatened" because of illegal attempts to remove bounds, and a certain conspiracy to deprive one of the parties to the contract of a right to exercise an option to purchase certain land, do not as a matter of law render the contract illegal, because they do not necessarily mean that the parties by their contract sought to stifle criminal prosecutions.

A contract in writing and under seal, entered into between owners of adjoining land, both parties binding their heirs, executors, administrators and assigns, and containing recitals that it was made because of controversies as to boundary lines, a threatened prosecution of one party for attempted removal of fixed bounds, and a conspiracy by the same party to procure an interest in adjoining land in defiance of an option of purchase held by the other party, besides providing for the establishment of boundary lines and the execution of correcting deeds, provided that one of the parties would convey to the other party or his assigns at his or their option at any time within twenty-five years a nine tenths interest in a certain described parcel of real estate for a stipulated price and would "not enter into any deal" for the acquisition of a certain other adjoining lot or of an outstanding fractional interest in the lot first mentioned, but that if, owing to previous arrangements, he or they should acquire such lot or interest, it should be held for a like period of twenty-five years and conveyed upon demand to the second party and his associates and assigns upon payment of the amount paid therefor with interest and taxes. *Held,* that

 (1) The contract was not a mere option to purchase;

 (2) The contract created an equitable interest in land;

 (3) The contract was void as being in violation of the rule against perpetuities and the rule against restraints on alienation.

If a suit in equity cannot be maintained to enforce specific performance of a contract creating an equitable interest in land because the contract is in violation of the rule against perpetuities and of the rule against restraints on alienation, neither can such a suit be retained for an assessment of damages resulting from a breach of the contract.

The questions presented and determined in the suit above described have nothing to do with options for purchase or renewal contained in leases.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on July 18, 1917, and afterwards amended by the filing of a substitute bill on June 10, 1919, by the Eastman Marble Company, a Massachusetts corporation, Harvey T. Buck, Louella Howe Grant, both individually and as administratrix of the estate of John W. Howe, and George P. Eastman against the Vermont Marble Company, a Vermont corporation, seeking specific performance of a contract in writing dated July 18, 1892, relating to certain land containing quarries in West Rutland in Vermont, the parties to the contract being a New York corporation

which was the predecessor of and bore the same name as the defendant, and two of its official agents, parties of the first part, and the plaintiffs John W. Howe and Harry T. Buck, parties of the second part, they having assigned their individual interest therein to the plaintiff Eastman by an instrument dated February 18, 1904, and their successors also having made such assignments by instruments dated May 7, 1917, Eastman in turn assigning such interest to the plaintiff corporation on July 16, 1917. The substance of the contract is described in the opinion.

The defendant filed a demurrer to the whole substituted bill "by consent" on June 13, 1919, alleging the following causes of demurrer:

"1. The alleged contract [of July 18, 1892] . . . does not purport to be authorized by the board of directors of the defendant and is not duly executed nor properly attested as the contract of the defendant, and does not bear any seal purporting to be the corporate seal of the defendant.

"2. Said alleged contract appears upon its face to be unenforceable against the defendant either by specific performance or by action for damages for the following reasons:

"(a) Said alleged contract recites that it is in compromise of certain prosecutions threatened by the parties of the second part, to whose rights the plaintiff claims to have succeeded, against the defendant and others, parties of the first part, by reason of alleged removal of landmarks and monuments marking the boundary line between their respective lands, and in settlement of a claim by the parties of the second part that the defendant and others had been guilty of a conspiracy to acquire the disputed territory from the parties of the second part.

"It is therefore illegal and no action lies upon it.

"(b) Said alleged contract appears upon its face to have been procured by duress of threatened prosecutions for the crime of removing monuments designating the boundaries of the disputed land against this defendant and other parties desirous of avoiding the threatened proceedings.

"It is therefore unenforceable and no action lies upon it.

"(c) Said alleged contract being an agreement by the parties of the first part to convey lands at any time within twenty-five (25) years from July 18, 1892, at the option of the parties of the second

part, is in violation of the rule against perpetuities, is against public policy, unenforceable, and void.

"(d) Said alleged contract being an agreement by the parties of the first part to convey lands at any time within twenty-five (25) years from July 18, 1892, at the option of the parties of the second part, is an illegal restraint upon alienation, is against public policy, and void.

"(e) Said alleged contract being an agreement by the parties of the first part that neither they nor the said Fant shall dispose of or in any way injure or encumber said premises before the expiration of said period of twenty-five years is an illegal restraint upon alienation, is against public policy, and void.

"(f) Said alleged contract being an agreement by the parties of the first part that they will not enter into any deal directly or indirectly for the acquisition of any interest in certain lands for the period of twenty-five years, and by the parties of the second part that they will not acquire certain other lands for said period, is against public policy and void.

"Wherefore, in respect of all the relief sought by the plaintiff thereunder, the said contract is wholly unenforceable and void."

On the same day that the defendant filed its demurrer by consent, it also filed "by consent" a "Plea in bar to the whole of the substituted bill of complaint," which recited that it was filed "Without waiving its demurrer." The grounds of the plea were that the subject matter of the substituted bill was *res judicata* by reason of the proceedings and final decree in a suit in the chancery court of Rutland County in the State of Vermont, described in the opinion.

The plea and the demurrer were heard by. *Braley,* J. Material allegations in the pleadings are described in the opinion. The single justice was of opinion that an interlocutory decree should be entered overruling the demurrer and adjudging the plea to be insufficient; but at the request of the defendant he reported the case to the full court for its determination.

The case was argued at the bar in December, 1919, before *Rugg,* C. J., *De Courcy, Pierce,* & *Jenney,* JJ., and afterwards was submitted on briefs to all the Justices except *Braley,* J.

*B. B. Jones,* for the plaintiffs.

*F. H. Nash,* for the defendant.

RUGG, C. J.   This is a suit in equity whereby the plaintiffs seek to obtain the specific performance of a written contract to convey land containing marble quarries and located in West Rutland in the State of Vermont.   The contract bearing date July 18, 1892, purports to have been signed by the Vermont Marble Company, a New York corporation, predecessor of the defendant, a Vermont corporation, which, together with two of its officers or agents constitute the party of the first part, and by John W. Howe and Harvey T. Buck, to whose rights the corporate plaintiff alleges that it has succeeded by assignment from Howe and Buck to the plaintiff George P. Eastman and from Eastman to the plaintiff the Eastman Marble Company.   The contract purports also to be signed by other parties not here concerned.   Since the two others joined with the Vermont Marble Company as parties of the first part to the contract both were its officers or agents, for convenience reference hereafter will be made to that corporation alone as the party of the first part.   For convenience also reference will be made to Howe as including both himself and his associate.

The contract recites (1) that the Vermont Marble Company claims ownership to nine tenths interest in the Clark lot, so called, adjacent to a lot known as the American lot, by conveyance from one Fant; (2) that Howe, by assignment of an agreement dated May 8, 1890, held an option to purchase said nine tenths interest; (3) that the Vermont Marble Company, well knowing of that outstanding contract and option, nevertheless in defiance thereof and without the knowledge of Howe, obtained from the owner of said nine tenths of the Clark lot a conveyance thereof by deed of May 27, 1890; (4) that controversies had arisen between the parties as to the divisional line between the American lot and the Clark lot and prosecutions had been threatened by reason of removal by one Robinson, an agent of the Vermont Marble Company, of monuments marking the boundary between the two lots; and (5) that Howe believed the Vermont Marble Company and others, including Robinson, its agent, were conspiring to purchase the Manley lot so called lying next northerly of the Clark lot, well knowing that the owners had given to Howe on March 3, 1892, an option to purchase it and the remaining one tenth interest in the Clark lot.

The agreements of the contract are in part (1) that the monuments removed shall forthwith be restored to their original posi-

tions; (2) that the divisional line between the American and Clark lots shall "be and remain as it originally existed prior to the above mentioned removal or removals" of the bounds "and as it was originally laid out on the land," namely, a line parallel with and about sixteen and one half rods south of the Blanchard and Mead line, with references to two plans, one known as the Brown plan, dated in September, 1866, and the other as the Green plan, dated in July, 1873; (3) that the parties will join in making deeds for the reformation of the record descriptions contained in former deeds, to conform to the divisional line thus agreed upon; (4) that the Vermont Marble Company will at any time within twenty-five years at the option of Howe and his associate and their assigns convey to them nine tenths interest in the Clark lot for $2,800 with interest and taxes; (5) that the Vermont Marble Company will "not enter into any deal" for the acquisition of any interest in the Manley lot or in the remaining one tenth of the Clark lot, but that, if owing to previous arrangements it should acquire interests, then it will hold them for a like period of twenty-five years and convey them upon demand to Howe and his associate and assigns upon payment of the amount paid therefor with interest and taxes.

The bill alleges the acquisition of the remaining one tenth interest in the Clark lot and of the entire Manley lot by the Vermont Marble Company contrary to the terms of the contract, tender by the plaintiff of the amount due to the Vermont Marble Company in accordance with the terms of the contract, and demand for conveyance, refusal by the Vermont Marble Company to make such conveyance and denial by it of the validity of the contract, and concludes with appropriate prayers for specific performance of the contract or in the alternative for the assessment of damages for breach of the contract.

The defendant demurred to the bill and also filed a plea. The case comes before us on a report. The sufficiency of the plea is considered first.

The plea sets out in substance and effect these facts: In 1912 the defendant, the Vermont Marble Company, instituted in the Court of Chancery for Rutland County in the State of Vermont a suit seeking to restrain George P. Eastman, one of the present plaintiffs and the assignor of the corporate plaintiff in the suit at bar,

and one Clement, whose title was for the benefit of Eastman, from quarrying marble on the Fant lot (which is another name for the Clark lot), and for accounting and other relief. Eastman and Clement filed an answer to that suit and also a cross bill whereby they asserted ownership in themselves to the parcel of land twenty rods in width lying south of the divisional line established by the alleged contract of July 18, 1892, as the line between the American lot and the Clark lot. Answer was filed to the cross bill and the case went to trial.

The fundamental issue involved in those proceedings was the precise location of the Fant or Clark lot. That location depended chiefly upon the true boundary line between the American lot, so called, owned by Eastman and Clement, and the Clark or Fant lot owned by the Vermont Marble Company. The question whether Eastman had trespassed upon land of the Vermont Marble Company and had taken marble therefrom depended upon the ascertainment of the location of that boundary line. The determination of that question necessarily involved an inquiry into the chains of title by which the several parties to that suit acquired their holdings to the land and inevitably required a delimitation of the boundaries of the several parcels of land conveyed to each. That suit and cross bill were heard by the chancellor, who filed comprehensive and clear findings of fact. These findings of fact are unmistakably plain to the effect that the true boundary line between the American lot owned by Eastman and the Clark or Fant lot owned by the Vermont Marble Company is about three rods southerly of that boundary line as described in the contract of July 18, 1892, here in suit. The findings of fact of the chancellor show that in 1866 Andrew J. Mead owned all the property in controversy. The plan, a reduced copy of which is printed on page 146 herewith, shows distinctly the several lots as claimed and as found. After a full review of the history of the several titles and the deeds by which they were conveyed, the chancellor reached these conclusions:

(a) The north line of the Mead farm, which was also the boundary between it and land of Benjamin F. Blanchard, is not open to controversy. The litigation proceeds upon the footing that that is fixed.

(b) The Manley or Morgan lot, which was conveyed to the

Vermont Marble Company (two thirds in 1905 by deed of John H. Mead and another, and one third by deed of Eastman in 1911 pursuant to the order contained in the decree of a court of chancery), is ten rods in width and its southerly line is distant southerly from the north line of the Mead farm ten rods and is parallel therewith.

(c) The Fant or Clark lot (the title to all of which has vested in the Vermont Marble Company and one third of one tenth of which was conveyed to it by Eastman in accordance with an order contained in the decree of a court of chancery in 1911), is ten

rods in width southerly of and adjacent to the Manley or Morgan lot and its southerly line is distant southerly from the north boundary of the Mead farm twenty rods and is parallel therewith.

(d) This southerly line of the Clark or Fant lot is also called by the chancellor the present "pin line," because it is marked in part by three iron pins in a line between two marble posts, one post being set substantially at each end of that boundary line. The two marble posts and the three iron pins marking this boundary line all were put in place before 1890.

(e) The Vermont Marble Company "is a purchaser in good faith for value of the land which it claims to own in this suit without notice of right or a claim of defendants or any of their predecessors to any part thereof (except such as may appear in the deeds which are herein received in evidence and such evidences on the

ground as have been indicated). Neither of the defendants, Eastman and Clement, has ever had a deed of any land north of a line parallel with and twenty rods south of Mead's north line, other than the deeds herein mentioned and made a part of these findings of fact." These deeds manifestly refer to those by which Eastman acquired certain interests in that land, interests subsequently conveyed to the Vermont Marble Company.

(f) Neither Eastman nor Clement nor their predecessors in title "ever occupied or possessed land north of a line parallel with and twenty rods south of Mead's north line," prior to the deed from Howe to Eastman of May, 1903.

(g) Further findings of the chancellor relate to the Brown plan and the Green plan and the surveys upon which they were based. It is not necessary to narrate them in detail.

The chancellor made an order for a final decree establishing the boundary line between the American lot owned by Eastman and the Clark or Fant lot owned by the Vermont Marble Company as the line marked by the two marble monuments at the east and west ends and running through the three iron pins, forever restraining Eastman, his servants and agents, from trespassing upon land of the Vermont Marble Company to the north of that line and directing the payment of substantial damages. The case then went to the Supreme Court of the State of Vermont and is reported in *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425. In an exhaustive opinion by Mr. Justice Watson the decree of the chancellor was affirmed.

After the mandate from the Supreme Court, which was filed May 4, 1917, Eastman and Clement filed in the chancery court on May 16, 1917, a supplemental bill in the nature of a bill of review, which sought a rehearing on the ground of newly discovered evidence. That newly discovered evidence was the contract of July 18, 1892, upon which the plaintiffs rely as the foundation of the suit at bar. Protracted hearings were had upon that bill of review on the issue whether the alleged contract of July 18, 1892, was genuine. After being once concluded, the hearings were reopened on motion of the Vermont Marble Company to permit it to introduce further evidence bearing on the genuineness of that contract. Eastman thereupon was permitted to testify that whereas he had previously testified that his first knowledge of said

alleged contract of July 18, 1892, was obtained on May 6, 1917, such was not the fact, and that in truth he knew of its existence before that date. It was thereupon found by the chancellor as a fact that said alleged contract of July 18, 1892, was not newly discovered evidence and upon motion of attorneys for Eastman and Clement, the supplemental bill was dismissed and a final decree entered in accordance with the mandate of the Supreme Court.

"The proper office of a plea is . . . to present some distinct fact, which of itself creates a bar to the suit, or to the part to which the plea applies, and thus to avoid the necessity of making the discovery asked for, and the expense of going into the evidence at large." Mr. Justice Gray in *Farley* v. *Kittson*, 120 U. S. 303, 314. *Newton* v. *Thayer*, 17 Pick. 129, 132. The question is whether the fact of the Vermont adjudication, in connection with all the circumstances disclosed on the record, is a bar to the maintenance of the present suit.

The main force of the plea in the case at bar is that the findings and judgment in the Vermont suit constitute a bar to the maintenance of the present suit. It rests in essence upon the doctrine of *res judicata*. The bar of a judgment in another suit for the same cause of action between the same parties, or those in privity with them, extends not only to that which was pleaded or litigated in the earlier suit, but also to that which might have been pleaded or litigated. *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 46. But if the second suit is upon a different cause of action, the bar of the earlier judgment is limited to that which was actually litigated and determined. *Virginia-Carolina Chemical Co.* v. *Kirven*, 215 U. S. 252, 257. The parties to the present suit manifestly are not the same as those to the Vermont litigation. The present plaintiff has been incorporated since the termination of the Vermont suit. While the parties to the present suit are not the same as those to the Vermont litigation, they are privies so far as concerns the alleged contract. The present plaintiff holds all its rights under the alleged contract of July 18, 1892, by assignment from Eastman, who was a party to the Vermont suit. It is obviously and necessarily a privy with Eastman as to all matters arising out of and dependent upon that contract. *Hart Steel Co.* v. *Railroad Supply Co.* 244 U. S. 294, 298.

The cause of action set out in the bill of complaint in the Vermont

suit was the continuing trespass by Eastman upon land of the Vermont Marble Company. The issues raised by the pleadings in that suit were the title of that company to the Clark or Fant lot and the trespasses of Eastman thereon. The chief controversy there litigated centred about the precise location of the line between the American lot and the Clark or Fant lot. The alleged contract of July 18, 1892, was not referred to in the pleadings upon which the trial was had, wherein the findings of the chancellor were made as to the true location of the Clark lot. The first reference to that contract is in the supplemental bill in the nature of a bill of review. The only adjudication with reference to it is that it was not newly discovered evidence with reference to the trial of that suit. The alleged contract of July 18, 1892, constitutes the basis of the suit at bar. Specific performance of that contract is the relief sought by the plaintiff. Thus it appears that the causes of action upon which the two suits rest are not the same, but different. The rule of *res judicata* applicable under these circumstances is that "when the second action between the same parties is upon a different cause of action from the first, then the judgment in the former action is conclusive only upon those issues which were actually tried and determined." *Foye* v. *Patch*, 132 Mass. 105, 110, 111. "If the second action was upon a different claim or demand, then the judgment is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' *Cromwell* v. *County of Sac*, 94 U. S. 351, 353." *Bates* v. *Bodie*, 245 U. S. 520, 526. *Eastman* v. *Cooper*, 15 Pick. 276. *Arnold* v. *Arnold*, 17 Pick. 4. *Radford* v. *Myers*, 231 U. S. 725.

The plea in the case at bar, incorporating as it does the proceedings of the Vermont court, contradicts the recitals in the contract of July 18, 1892, in at least three particulars: (1) knowledge by the Vermont Marble Company of the existence of the option held by Howe for the purchase of the Clark lot, (2) purchase of an interest in that lot by the Vermont Marble Company in defiance of that option, (3) the removal of bounds marking the true line between the American lot and Clark lot. The findings of the chancellor render impossible of execution the first three agreements of said contract, all of which relate to the true boundary line between the American lot and the Clark lot. That was a

matter directly adjudged in the Vermont suit and it binds the parties to the suit at bar notwithstanding the contract. The defendant strongly relies in this connection upon the finding of the chancellor to the effect that the Vermont Marble Company was "a purchaser in good faith for value of the land which it claims to own in this suit without notice of right or a claim of defendants" in that suit, who are joined as plaintiffs here, or "any of their predecessors to any part thereof," with exceptions not here material, a finding with reference to the Fant lot or the Clark lot. The size and precise boundary lines of that lot were established by the chancellor. The Clark lot as thus established is different in location and size from that described in the alleged contract. Upon familiar principles that finding and opinion are to be interpreted in the light of the issue as framed by the pleadings. *Reinman* v. *Little Rock*, 237 U. S. 171, 179. The issue framed by the pleadings in the Vermont case related wholly to legal title to real estate. No question was raised by the pleadings upon which a finding as to good faith of the Vermont Marble Company in its acquisition of title was necessary. On the question of title as disclosed by the record of the Vermont case, the point whether the Vermont Marble Company was "a purchaser in good faith for value of the land" which it claimed·to own was of no consequence. Such a finding may have been pertinent to some contentions mooted at the trial and hence included within the decision of the chancellor. However that may be, there is no averment in the plea concerning the law of Vermont. Hence it must be assumed to be the same as that of Massachusetts. *Parrot* v. *Mexico Central Railway*, 207 Mass. 184, 191–194. Under the law of Massachusetts upon the issues raised by the pleadings in the Vermont case, the finding to the effect that the Vermont Marble Company was "a purchaser in good faith for value of the land which it" claimed in the Vermont suit to own would not be *res judicata* against the plaintiff as to the contract of July 18, 1892, here in suit. That contract was not in the issue at that time, and that finding of the chancellor, whatever its force in that suit, cannot be thought to, have been made with reference to any such issue as is raised in the present cause.

The differences in location and size of the Clark and Manley lots as described in the alleged contract of July 18, 1892, and as set

forth in the finding of the chancellor in the Vermont case, are not such as of themselves on their face to render unenforceable the contract. Whether there is such a difference as to affect the identity of the subject matter of the contract must be determined upon a trial. See *Dzuris* v. *Pierce*, 216 Mass. 132, 135, and *Percival* v. *Chase*, 182 Mass. 371.

The alleged contract, if presented as evidence in the Vermont trial and found genuine, would have been decisive in favor of the contentions of Eastman. His failure to offer it in evidence at that trial where it was not in issue on the pleadings does not as matter of law prevent him from relying upon it as an independent cause of action. Of course the plaintiff as the assignee of Eastman can enforce its obligations only so far as it is not at variance nor inconsistent with the matters in issue and adjudged in the Vermont suit. But subject to the adjudications of that suit as to the matters in issue on the pleadings in that suit, the plaintiff is not barred from prosecuting whatever rights it may be able to prove arising out of the alleged contract of July 18, 1892. The plea is therefore bad.

Without pausing to discuss the point whether under modern equity pleading and practice the earlier rule prevails that the filing of a general plea is a waiver of a general demurrer, we consider the questions raised by the demurrer, since these have been reported by the single justice.

It is urged that the alleged contract is illegal or void on its face because it undertakes to strangle threatened criminal prosecutions. This contention cannot be supported. It is recited in the alleged contract that "controversies" have arisen as to the location of the divisional line between the American lot and the Clark lot and "certain prosecutions have been threatened" on account of recent attempts to remove bounds. These controversies, for aught that appears, may all have been honest, the removal of bounds open, notorious and under claim of right, and the prosecutions civil actions designed to test the titles of the respective parties. While "prosecution" often is used to describe a criminal proceeding, that is not its necessary signification. It frequently is used respecting the carrying forward of litigation on the civil side of the court. *Clinton* v. *Heagney*, 175 Mass. 134. It is fundamental that an agreement resting in any part upon an illegal consideration is of

no binding force. *Taylor* v. *Jaques*, 106 Mass. 291. A contract susceptible of two meanings, one lawful and the other not, will be supported rather than defeated. The presumption is, in the absence of something to show the contrary, that the parties intended to act in accordance with the law. Presumptions are in favor of innocence and legality. *Guernsey* v. *Cook*, 120 Mass. 501. *Collector of Taxes of Boston* v. *Rising Sun Street Lighting Co.* 229 Mass. 494, 497.

The recital in the contract concerning a conspiracy stands upon the same footing. That word does not necessarily import a crime. The alleged criminal aspect of the contract is not made certain by the clause that it shall not be recorded nor made public. That might have been inserted from innocent motives.

It is urged that this contract is void because in violation both of the rule against perpetuities and of the rule against restraints on alienations. That contention is grounded on the express covenant to the effect that conveyance shall be made of the real estate by the Vermont Marble Company upon demand at any time within twenty-five years from the date of the contract and upon the necessary implication that there shall be no other conveyance at all during that period.

These two rules, as pointed out by Mr. Gray in § 2a of Rule against Perpetuities (3d ed.), are "modes adopted by the Common Law for forwarding the circulation of property which it is its policy to promote." A common form of the statement of the rule against perpetuities is that executory limitations or interests are void unless they take effect *ex necessitate* and in all possible contingencies within a period not exceeding twenty-one years after the termination of a life or lives in being at the creation of them. *Minot* v. *Paine*, 230 Mass. 514, 522, and cases there collected. See Gray, Rule against Perpetuities, (3d ed.) § 201. It is an essential characteristic of an estate in fee simple that it shall be alienable and free from restraint in that particular.

The contract in the case at bar is not a mere option to purchase. If the contract had been a simple personal agreement of that sort, it would have given to Howe and to the plaintiff "no interest in the property." *Thacher* v. *Weston*, 197 Mass. 143, 147. See cases collected at 39 Cyc. 1238, note 19. The contract here in suit was in the form of covenants under seal binding heirs, executors, ad-

ministrators and assigns of each party.   It concerned real estate
and purported to create important interests therein quite apart
from the clause as to conveyance to Howe.   The clause relating to
purchase by and conveyances to Howe cannot be excised from the
instrument, dissociated from its context and treated as if it were a
separate, distinct and independent option unconnected with other
clauses.  It must stand or fall as a part of a single document with a
defined consideration covering all matters of agreement.   Such a
clause in such a contract, in the light of the other clauses, must be
held to create an equitable interest in land.

We think that this agreement, so far as concerns a right to
specific performance, was void as being in contravention of one or
both of these rules.   The agreement purports to create an equitable
interest in land.   It is not a mere option.   It is in the form of
mutual covenants.   It purports to create an absolute right to be
exercised within twenty-five years and imposes an immediate
restraint upon alienation by the owner for a like period.   It is
in that respect unenforceable under the rule.   *Winsor* v. *Mills,* 157
Mass. 362.   *London & Southwestern Railway* v. *Gomm,* 20 Ch. D.
562, 576, overruling *Birmingham Canal Co.* v. *Cartwright,* 11 Ch.
D. 421.   *Savill Brothers, Ltd.* v. *Bethell,* [1902] 2 Ch. 523, 540, 541.
*Barton* v. *Thaw,* 246 Penn. St. 348.   *Woodall* v. *Bruen,* 76 W. Va.
193.   *H. J. Lewis Oyster Co.* v. *West,* 93 Conn. 518.

The foundation of the rules against perpetuities and against
restraints upon alienation is that it is contrary to the spirit of
our institutions that titles to real estate be tied beyond the period
fixed so as to stifle free exchange.   Therefore deeds to that end
are held void.

It is contended that, even if specific performance of the con-
tract must be denied because of these rules, yet damages may be
recovered for breach of the contract against the maker.

It is doubtful whether the allegations of the bill go far enough
to show that the defendant is liable as the maker of the contract.
The maker of the contract was the New York corporation.   The
defendant is the Vermont corporation of the same name.   *Brighton
Packing Co.* v. *Butchers Slaughtering & Melting Association,* 211
Mass. 398, 403, 404.   *Gray* v. *Hemenway,* 212 Mass. 239, 242.
*Marsch* v. *Southern New England Railroad,* 230 Mass. 483, 498.
If the defendant was not the maker of the contract, there would be

difficulty in supporting an action against it for breach of such a contract as this. *London & Southwestern Railway* v. *Gomm,* 20 Ch. D. 562. But we pass that point by.

The reason, on which rest the rule against perpetuities and the rule against restraints on alienation, equally inhibits the recovery of damages for breach of a contract not specifically enforceable because in contravention of one or both of these rules. The tendency of mulcting one for breach of a covenant to convey land, in the nature of things in the ordinary case, has as much deterrent force and effect in arresting the free circulation of property as would the specific enforcement of such contracts. If one must pay full damages for refusing to perform such a contract, it would for all practical purposes constrain him from making a conveyance and compel him to refuse to alien the title and hence would tie up the title to property quite as much as liability to injunction against alienation and to a decree for specific performance. One method would be as efficacious as the other against "forwarding the circulation of property which it is" the policy of the common law to foster. *Sage* v. *Hampe,* 235 U. S. 99, was an action to recover damages for breach of contract to purchase certain land and to convey to the plaintiff certain other land. The defendant contended that the land to be conveyed by him belonged to Indians, which under act of Congress could not be conveyed away for twenty-five years. In holding that such an action could not be maintained, it was said at page 105: "A contract that on its face requires an illegal act, either of the contractor or a third person, no more imposes a liability to damages for nonperformance than it creates an equity to compel the contractor to perform. A contract that invokes prohibited conduct makes the contractor a contributor to such conduct. . . . And more broadly it long has been recognized that contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent cannot be made the ground of a successful suit." That principle and those words are equally pertinent to the contention that the present plaintiff can recover damages for breach of a covenant which is void. "Contracts . . . against alienation of land, including those violating the law of perpetuities," were included among those held to have been "illegal on principles long recognized by the common law" in *Egerton* v. *Brownlow,*

4 H. L. Cas. 1, at page 125.   It was held in *Manchester Ship Canal Co.* v. *Manchester Racecourse Co.* [1900] 2 Ch. 352, at page 360, that apart from a validating act of Parliament an agreement between two corporations to the effect that one should have first refusal to buy land belonging to the other used as a race-course should it cease to be so used or be proposed for use for dock purposes, "would be clearly void for perpetuity, because there is no limitation in point of time." *In re Rosher*, 26 Ch. D. 801. *Hope* v. *Mayor & Aldermen of Gloucester*, 7 De G., M. & G. 647.   See 51 Sol. J. & W. R. 648, 669; 54 Ibid. 471, 501.   There seems to us to be an irreconcilable inconsistency in refusing to enforce specifically covenants concerning an interest in property which violate the rule against perpetuities and yet at the same time enforcing an action for damages for refusal to perform such a covenant.   Since it is settled that such covenants cannot be enforced specifically, it must follow that damages cannot be recovered for such refusal. Any other conclusion would afford simple and direct means, at least for corporations which ordinarily have unlimited existence, through the form of options to buy covering long periods and binding heirs and assigns, to circumvent the rule against perpetuities and restraints upon alienation.   Since such contracts are held to create "no interest in the property" (*Thacher* v. *Weston*, 197 Mass. 143, 147, and cases collected 39 Cyc. 1238, note 19), there would be no difficulty in enforcing such agreements either by specific performance or by action for their breach no matter how long might be their term.   The mischiefs would easily arise against which those rules were established.

The contention that an action for damages lies for breach of a contract which violates the rule against perpetuities is supported by the decision of Warrington, J., in *Worthing Corp.* v. *Heather*, [1906] 2 Ch. 532, and gains some color from what was said in *South Eastern Railway* v. *Associated Portland Cement Manufacturers, Ltd.* [1910] 1 Ch. 12.   See also Gray, Rule against Perpetuities, (3d ed.) § 330*c*.   So far as these decisions conflict with the conclusion here stated, we are not disposed to follow them.

The result reached in *South Eastern Railway* v. *Associated Portland Cement Manufacturers,* Ltd. [1910] 1 Ch. 12, doubtless was right and would have been reached had the case arisen in this Commonwealth not on the ground there stated by the judges in the

court of appeal, but by construing the deed as creating an immediate easement by exception or by reservation under principles summarized with collection of authorities in *Childs* v. *Boston & Maine Railroad,* 213 Mass. 91. For another ground upon which the Cement Company decision may be thought to stand, see 27 Law Quar. Rev. 154, 155.

There is nothing in the decision in *Winsor* v. *Mills,* 157 Mass. 362, at variance with this conclusion. In that case real estate was held upon a trust which in some of its terms violated both the rule against perpetuities and the rule against restraints on alienation. A bill in equity was brought by the executors of one beneficiary, who was also the trustee, seeking to sell the real estate, the defendant being the other beneficiary. The invalidity of those portions of the trust violative of these two rules of property was declared, but relief to the plaintiffs was made conditional, according to the opinion of a majority of the court, upon the view that it would be inequitable to give relief to the plaintiffs unless they were willing to perform the agreement of their testator with the defendant affording the latter opportunity to purchase upon terms stated in the original agreement. That was a quite different proposition from allowing the maintenance of a direct action for damages for breach of the agreement.

The question presented on this record has nothing to do with options for purchase or renewal contained in leases. See in this connection *Mann, Crossman & Paulin, Ltd.* v. *Registrar of Land Registry,* [1918] 1 Ch. 202, and cases collected in 27 Yale Law J. 885.

The result is that an interlocutory decree should be entered sustaining the demurrer on grounds 2 (c), (d), (e) and adjudging the plea insufficient.

*So ordered.*