Kane, Robert J., J.
In this action, Robert J. Bortolotti, Trustee of the 3630 Development Trust (Bortolotti), seeks a declaratory judgment voiding Robert F. Hayden TV’s (Hayden) first refusal rights and ordering Robert G. Kesten, Sr. (Kesten) to convey the property located at 3630 Falmouth Road, Marstons Mills, Mass. Both Hayden and Kesten move for summary judgment. Bortolotti contends that the statutory rule against perpetuities voids Hayden’s first refusal rights. Conversely, Hayden contends inter alia that G.L.c. 184, §23, limiting an exercise of an unlimited restriction on title or use of property, controls and authorizes his exercise of first refusal rights. For reasons set forth in this Memorandum of Decision, I grant partial summary judgment in favor of Bortolotti.

UNDISPUTED FACTS

The land known and numbered as 3630 Falmouth Road, Marstons Mills, Mass, (locus) was once part of a larger tract registered in Land Court proceedings to Hayden’s father (Hayden Sr.). At that time, the land tract contained Hayden Sr.’s building and moving company and an antique store run by Hayden Sr.’s spouse.
At the time of Hayden, Sr.’s death on January 29th, 1980, title to locus was held by The Hayden Land Development Company, Inc. (Land Development Company). Hayden, Sr.’s will’s inventory listed 565 shares of stock in the Land Development Company. Executors of Hayden, Sr.’s estate participated in a stock redemption plan with the Land Development Company by which the executors exchanged shares of stock in the company for lots of land shown as Lots 93, 94, 95 and 96, with Lot 94 the subject of the present civil action. By deed, the Land Development Company conveyed locus and other lots to the executors in exchange for 150 shares of Common Stock.
The executors then sold and conveyed the land to Albert Mattson, imposing in that transaction a set of restrictions. The restrictions read:
(a) The grantee of these premises and his heirs, executors, administrators, and assigns shall not sell or otherwise dispose of said premises except after first offering the same for sale to the grantors, their heirs and assigns upon the same terms and conditions as those contained in a bona fide offer received by and acceptable to the grantee. In the event of the receipt of such an offer, the grantee *238 shall notify said grantors and shall set forth in full in such notice all the terms and conditions of said offer in detail and offer to sell the same to said grantors upon the same terms. Within twenty (20) days after the receipt of such notice, said grantors may accept such offer, and upon making the payments required thereby, purchase the premises upon such terms and conditions. In the event that within the said 20-day period said grantors so [sic] not accept such offer (or shall indicate in writing their intention not to do so), the grantee shall be free to sell said premises to the person making such bona fide offer. The provisions of this restriction, however, shall not be deemed to prohibit the conveyance or devise of the premises to the surviving spouse or any of the heirs or devisees of the grantee. This restriction shall not apply to a sale under a power of sale contained in a bona fide mortgage affecting the premises.
(b) No use shall be made of the premises which would in any way manner [sic] be competition with the normal and usual types of businesses which are carried on at a shopping center. Said restricted uses shall include, but are not limited to: banking establishments, restaurants, and other food establishments, retail stores and retail sales showrooms, retail trade services and shops. The grantors, or their successor in interest, may very [sic] this restriction, in writing, as to a particular proposed tenant. This restriction shall not apply to any business currently being carried on under an existing lease or leases of said premises. It shall, however, apply to all future leases of said premises. This restriction shall not apply to a second bank once a first bank has opened and is operating at the shopping center.
In March of 2005, Hayden received notice of Bortolotti’s offer to purchase locus, and notice to “match the terms and provisions as set forth in the Purchase and Sale Agreement executed by Kesten and Bortolotti.” Seasonably, Hayden through counsel tendered a deposit for purchase of locus. A closing was scheduled for March 18th, 2005.
Prior to the closing date, Hayden received notice that Bortolotti had obtained a lis pendens on the locus. Having received notice of the lis pendens, Kesten was notified by Hayden that he would not be attending the closing but still wanted to purchase locus.
DISCUSSION G.L.c. 184, §23
Hayden maintains that the deed’s restriction in reserving to the grantor, his heirs, executors, administrators and assigns a right of first refusal renders the restriction subject to G.L.c. 184, §23. The statute states:
Conditions and restrictions, unlimited as to time, by which the title or use of real property is affected, shall be limited to the term of 30 years after the date of the deed or other instrument or the date of the probate of the will creating them . . .
G.L.c. 184, §23.
Restrictions on conditions affecting title represent “conditions . . . affecting legally recognized rights and incidents of ownership.” Somerset Savings Bank v. Chicago Title Insurance Co., 420 Mass. 422, 428 (1995) (citation omitted); see also Gloucester Landing Assocites, Limited Partnership v. Gloucester Redevelopment Authority, 60 Mass.App.Ct. 403, 411 (2004) (citation omitted); Chicago Title Ins. Co. v. Kumar, 24 Mass.App.Ct. 53, 57 (1987). A claim that “affect[s] title” constitutes a claim brought by a party “to enforce some interest in the real estate.” Wolf v. Gormally, 440 Mass. 699, 706 (2004) (citation omitted). A right of first refusal constitutes such an interest enforceable by specific performance. Greenfield County Estates Tenants Association, Inc. v. Deep, 423 Mass. 81, 89 (1996).
In the instant case, the deed restricted without any time limitation the grantee’s rights of sale by compelling any offer to purchase to be subject to Hayden’s first refusal rights. This restriction on the alienability of the real estate affected the incidents of ownership and consequently constitutes a “restriction ... by which the title ... of real property is affected . . .” G.L.c. 184, §23; see also Tucker v. Connors, 342 Mass. 376, 381 (1961) (owner of real estate “put it out of his power to convey to [third party] if the option should be exercised”). Unlimited as to time, the deed’s restriction on title rights makes it subject to G.L.c. 184, §23.
G.L.c. 184A, 1-11
Although G.L.c. 184, §23 defines the outer limit of a restriction’s enforceability against the landowner, a holder of first refusal rights may still be subject to the time limitations of the rule against perpetuities. Exercise of a right that “imposes an immediate restraint upon alienation of the owner of the property” must comply with the rule against perpetuities that guards against “unreasonably long restrictions on the alien-ability of land.” Certified Corp. v. GTE Products Corp., 392 Mass. 821, 825 (1984) (citations omitted).
The common-law rule against perpetuities now stands within G.L.c. 184A, §§1-11. In 1954 the General Court enacted St 1954 C. 641:1, codified in G.L.c. 184A 1-6. The enactment adopted the common-law rule modified “so as to determine the validity of future interests at the termination of the applicable life estate or lives in being.” Id. at 823.
By St 1989, c. 668:1, the General Court amended c. 184A. In its present version, the statute states that:
An option in gross with respect to an interest in land or minerals, or a preemptive right in the nature, of a right of first refusal in gross . . . becomes invalid if it is not exercised within thirty years after its creation.[1]
The current law provides for reformation of the disposition of the property interest in land “in the *239 manner that most closely approximates the transferors’ manifested plan of distribution.’’ G.L. 184A, §3. Exercise of the statutory authority to reform such a disposition must conform with provisions within G.L.c. 184A, §1 and must arise out of a “petition of an interested person.” G.L. 184A, §3.[2]
Before this Court stands a deed executed in 1981, thereby coming under the substantive provisions of St. 1954, c. 641:1. The 1954 codification adopted the common-law rule’s application to options to purchase. See ‘67'Harvard Law Review 1349, 1355 (1953-54).
Not every option to purchase comes within the common-law rule. Eastman Marble Co. v. Vermont Marble Co., 236 Mass. 138, 152-53 (1920). Moreover, a right of first refusal differs in its timing and substance from an option to purchase. Greenfield County Estates Tenants Association, Inc. v. Deep, 423 Mass. at 89. Only upon “notice of receipt of a bona fide offer from a third party [does] a right of first refusal ripen[ ] into an option to purchase.” Id.
The precondition of notice of a bona fide offer distinguishes significantly a first refusal right’s restraint on the alienability of property from an option to purchase. A leading property treatise explains the substantive difference:
An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he’d be willing to part with ownership. A preemption does not give to the preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price. Upon receiving such an offer, the preemptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone.

American Law of Property, 26.64 at 507.

Under our common law, the rule’s nullification of an option to purchase unlimited in time derives from the foundational principle that such an option “stifle[s] free exchange.” Eastman Marble Co. v. Vermont Marble Co., 236 Mass. at 153; see also Windsor v. Mills, 157 Mass. 362, 364-65 (1892) (making it “impossible for the owner to make it available in the usual and ordinary way”). The first refusal rights before this Court assumes the mildest affect upon the alienation of real estate. It does not contain a fixed price or a requirement to purchase at market value. Instead, it requires the holder of the right to match the third party’s terms and conditions.
Nonetheless, such a right of first refusal affects the real estate marketplace. By noticing prospective purchasers that a third party may match the offer, the right of first refusal dampens the enthusiasm of potential buyers to engage in a negotiation that may require time and expense while ending up in a purchase and sale agreement superceded by exercise of first refusal rights. Such restraint upon alienation renders the restriction as a matter of public policy one that is disfavored. Fisher v. Fisher, 23 Mass.App.Ct. 205, 207 (1986). Additionally, IV Restatement of Properly has adopted the position that first refusal rights comes within the common-law rule. Likewise, the majority of jurisdictions apply the common-law rule to first refusal rights. See Ferrero Constr. v. Dennis Rourke Corp., 536 A.2d, 1137 (1988) (collecting and analyzing state decisions on application of rule against perpetuities to first refusal rights). Based on our state policy against restraint upon alienation and the common-law rule’s policy against the remote vesting of property interests, I rule that the common-law rule adopted by St 1954, C. 641 applies to Hayden’s first refusal rights provided the right fits the definition of an option covered by the common-law rule.
The common-law rule covers an option to purchase that is not “a mere option to purchase,” conferring contractual rights but an option that creates, “an equitable interest in land.” Eastman Marble Co. v. Vermont Marble Co., 236 Mass. at 153; see also Certified Corp. v. GTE Products Corp., 392 Mass. at 824. The option before the Court does not stand as a “separate, distinct and independent option ...” Eastman Marble Co. v. Vermont Marble Co., 236 Mass. at 153. Rather, the restriction of a right of first refusal was situated within a real estate conveyance which included “mutual covenants involving the property . . .” Certified Corp. v. G.T.E. Products Corp., 392 Mass. at 824. The option thus comes under the common-law rule and violates the rule as it was “without a provision for duration of the interest to be measured by any life in being at the time of its creation.” Id. Consequently, the right of first refusal is unenforceable.

OTHER CLAIMS

Apart from contesting the application of the common-law rule against perpetuities to first refusal rights, Hayden has without citation contended that Bortolotti’s lack of standing and estoppel principles raise defenses to this action. Upon consideration, the Court rejects those claims.

ORDER

Based on the foregoing judgment, partial summary judgment shall enter declaring Hayden’s right of first refusal void and unenforceable. All other requests for relief are denied.

 The term “option in gross” appears infrequently and often obscurely in the case law and legal treatises. As best understood, the term applies to an option situated in an agreement other than alease. Certified Corp. v. GTE Products Corp., 392 Mass. at 823-24, n.5; Powell on Real Property, 771(2].

 The papers fail to reveal any petition to reform the disposition pursuant to G.L.c. 184A, §3.