ERNEST L. CHILDS *vs.* MALCOLM C. SHERMAN, trustee,
& another
(and a companion case).

Barnstable. November 10, 1966. — December 2, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Assignment for Benefit of Creditors. Trust,* For benefit of creditors.
*Rule against Perpetuities. Contract,* Agreement not to compete. *Un-
fair Competition. Equity Pleading and Practice,* Suit to enjoin com-
petition, Decree. *Fiduciary.*

Where an insolvent proprietor of a business conveyed its assets to a trustee to operate or liquidate it for the benefit of the creditors, the debtor's reversionary interest in any funds of the trust remaining after satisfaction of the creditors' claims vested in him at the time of the creation of the trust and was not invalid under the rule against perpetuities. [453–454]

An agreement whereby an insolvent proprietor of a business transferred all its assets to a trustee to operate or liquidate it for the benefit of such of the creditors as assented to the trust arrangement was to be interpreted as requiring that any creditor wishing to participate give his assent within a reasonable time, which was far less than twenty-one years, after the creation of the trust, and there was no merit in a contention that the trust failed under the rule against perpetuities in that the membership of the class of beneficiaries could not be determined within the period of the rule.  [454–455]

It could not be said, in the circumstances, that a transfer of a business and its assets by its insolvent proprietor to a trustee for the benefit of the creditors and possible return to the debtor after satisfaction of their claims was "involuntary" so as to preclude an implication of an agreement by the debtor not to compete with the transferred business.  [455–456]

In a suit in equity by a trustee to whom the insolvent proprietor of a business had conveyed it and its assets for the benefit of the creditors against the debtor to enjoin him from competing with the transferred business in breach of an implied agreement by him not to do so, a decree enjoining him "permanently" should be modified so as to limit the injunction to a certain reasonable time.  [456]

Upon transfer of an electrical business and its assets by its insolvent proprietor to a trustee for the benefit of the creditors and employment of the debtor by the trustee in the business, there was no fiduciary relation between them precluding the debtor from doing and being paid for electrical work on his own time.  [456]

Two BILLS IN EQUITY filed in the Superior Court on April 5, 1965, and April 12, 1965, respectively.

The suits were heard by *Gourdin,* J., on a master's report.

*Richard O. Staff* for Ernest L. Childs & another.

*Philip Barnet* for Malcolm C. Sherman, trustee.

SPIEGEL, J.  These are cross bills in equity arising from the same facts.  In the first suit the plaintiff Ernest L. Childs (Childs) seeks an accounting, the appointment of a receiver and other relief against Malcolm C. Sherman (Malcolm) in the latter's capacity as trustee and also names one Ellery C. Sherman (Ellery) as a defendant.[1]  In the

---

[1] The bill alleges that Ellery "in effect, will be in the status of a preferred creditor." No relief was sought against him. It appears that he was merely a party to the trust agreement.

second suit Malcolm seeks an accounting from Childs and from his attorney, Richard O. Staff (Staff), for moneys which allegedly belong to the trust, and an order restraining Childs from engaging in any business which competes with the trust until the purposes of the trust agreement have been fulfilled. One Randolph E. Childs was also named as a defendant.[2] The cases were referred to a master who made subsidiary and general findings of fact. The master's report was confirmed from which no appeal was taken.

In the first suit a final decree was entered dismissing the bill, from which Childs appealed. In the second suit a final decree was entered in which Childs and Staff were ordered to account to Malcolm for certain sums and Childs was "restrained permanently from engaging in the electrical business in Barnstable County in competition with Malcolm C. Sherman as he is the trustee . . . ." Malcolm, Childs and Staff appealed from this decree.

We summarize the material facts found by the master. Childs, engaged in business as an electrical contractor in Hyannis (under the firm name of Ernest L. Childs & Son), was insolvent and unable to pay his creditors on and for some time prior to December 21, 1964. On that date he entered into a written agreement with Malcolm in which he conveyed to Malcolm, as trustee, all of the assets of Childs's electrical business including goodwill and accounts receivable. The trustee was given the discretionary power to carry on the business "with the view of a gradual winding up of the same, instead of immediately selling the same . . . ." Although the written instrument gave the trustee the power to liquidate the business, the parties understood that the business would be turned back to Childs as soon as feasible. Childs was given a "first refusal option" in the event the trustee should decide to sell the trust assets.

The beneficiaries of the trust were to be those creditors of Childs who assented in writing to the trust agreement. They were to receive distributions of the net proceeds of

---

[2] This defendant did not appeal.

the trust in the event that the business was liquidated and ratable shares of "[a]ny money over and above that required to pay the expenses and debts . . ." of the business. The instrument stated that the creditors who assented thereto "shall and will accept their distributive share hereunder as paid to them by [t]rustee in full and complete satisfaction of each, all and every of their several demands of every kind and nature against said [d]ebtor." Ellery was a principal creditor of Childs and joined in the original execution of the agreement as a creditor. Notices of the agreement were sent to Childs's creditors together with forms for their assent. "A number of creditors filed their assent to the agreement."

After the signing of the agreement Malcolm took over the operation of the business under the name of Ernest L. Childs & Son. In January, 1965, Childs and Malcolm had a misunderstanding over future business. After this misunderstanding Childs "started to do some work on nights and Sundays on his own." On February 12, 1965, Malcolm discharged Childs "[b]ecause of . . . [his] increasing dissatisfaction with the amount of work that Childs was doing and because Childs went off on a vacation without letting Malcolm . . . know where he was going . . . ."

Childs then started a new business in direct competition with the trustee. From January, 1965, Childs "collected" certain moneys on accounts which had been assigned to the trustee. A portion of the moneys so collected is held by Staff "in his escrow account." There was a deficit in the operation of the trust between December 21, 1964, and April 30, 1965.

From the accounting contained in the master's report it appears that the beneficiaries of the trust have not received any distribution.

1. The first ground of Childs's appeal is that the trust agreement violates the rule against perpetuities and hence is void.

He argues that "(1) the interest of the debtor [Childs] is a future interest which does not vest within the time pre-

scribed by the rule, since it is an indefinite time; (2) the interest of creditors 'who shall release debtor and who have assented hereto' may not vest within the time prescribed by the rule, since creditors could come in at any time at all.''

The master's finding that the parties intended that the business would be turned back to Childs justifies the conclusion that Childs had a reversionary interest in the trust assets. Even if the master had not made such a specific finding, it is clear from the purposes for which the trust was created that the trustee would be bound to return to Childs any funds remaining from the operation or liquidation of the business after the creditors had been satisfied. This reversionary interest was vested in Childs upon the creation of the trust, *Commissioner of Corps. & Taxn.* v. *Bullard,* 313 Mass. 72, 76, and hence does not violate the rule against perpetuities. Gray, Rule against Perpetuities (4th ed.) § 205.

By the terms of the trust agreement a creditor must assent to the agreement and agree to release the debtor in exchange for a right to receive distribution from the trust. A trust in favor of a class of persons ''will fail, of course, if the membership of the class cannot be ascertained within the period of the rule against perpetuities.'' Scott, Trusts (2d ed.) § 120. Childs argues that a creditor may indefinitely delay filing an assent to the trust agreement, and hence that the membership of the class cannot be determined within the period of the rule. We do not agree.

It seems fairly obvious that it was a distinct advantage to Childs to have the trustee operate the business instead of immediately liquidating it as he had authority to do under the agreement. By the trustee's operation of the business there was an opportunity to realize sufficient profits to satisfy Childs's creditors. It seems equally obvious that the parties expected to accomplish this result within a reasonable period of time. This latter conclusion is borne out by the further agreement of the parties on December 21 that, ''as soon as feasible, the business would be turned back to Childs.'' Thus, we interpret the trust agreement as re-

quiring that any creditor, wishing to avail himself of the provisions of the trust, should file an assent to the trust agreement within a reasonable time of the creation of the trust. A reasonable time under these circumstances is certainly much less than twenty-one years. See *Brandenburg v. Thorndike,* 139 Mass. 102, 103. Hence, we hold that this trust for the benefit of assenting creditors did not violate the rule against perpetuities. Accord, *Wong* v. *Di Grazia,* 60 Cal. 2d 525.

"Certainly our function is not to interpret the rule so as to create commercial anomalies. . . . [T]he parties to . . . [common business arrangements] do not suspect that the rule will be extended to invalidate their agreements; even the attorneys . . . may excusably not anticipate such application. Surely the courts do not seek to invalidate bona fide transactions by the imported application of esoteric legalisms. Our task is not to block the business pathway but to clear it, defining it by guideposts that are reasonably to be expected. . . . We therefore do not propose to apply the rule in the rigid or remorseless manner . . .; instead we shall seek to interpret it reasonably, in the light of its objectives and the economic conditions of modern society." *Wong* v. *Di Grazia,* 60 Cal. 2d 525, 533–534. Documents should be interpreted, if possible, so as to avoid the conclusion that they violate the rule against perpetuities. See *Brandenburg* v. *Thorndike,* 139 Mass. 102, 103; *Worcester County Trust Co.* v. *Marble,* 316 Mass. 294, 300–301; *Winstanley* v. *Chapman,* 325 Mass. 130, 132.

2. Childs also contends that the trust agreement "expresses no promise not to compete" and that "there should be no restrictive covenant by implication." Although Childs's brief is far from clear on this point his argument appears to rest on the theory that his transfer of the business was an "involuntary" one. Our examination of the record does not support this view.

We note the general finding of the master that Childs's operation of a corporate business under the name of Childs Electric Co., Inc. "violates the spirit and intent . . . of

the agreement of December 21st and is harmful to the creditors.''

Although the written agreement does not contain a specific provision against competition by Childs we are satisfied that the subsidiary findings of the master amply justify a determination that Childs agreed not to compete. See *Old Corner Book Store* v. *Upham,* 194 Mass. 101, 106–107.

Furthermore, Childs ignores the circumstances attendant on the transfer of the business. Not only was this for the benefit of Childs's creditors, but it was plainly intended to aid Childs by liquidating his debts and enabling him to resume his business. This can hardly be termed ''involuntary.''

We observe that paragraph 6 of the decree in the second suit states that '' Childs, his agents, servants, and attorneys, . . . are restrained permanently from engaging in the electrical business in Barnstable County in competition with Malcolm C. Sherman as he is the trustee for Ernest L. Childs & Son.'' This portion of the decree is somewhat ambiguous as to the period of time that the restraining order is to be in effect. It should not extend beyond a reasonable time. *Metropolitan Ice Co.* v. *Ducas,* 291 Mass. 403, 405. We are of opinion that in the rather unusual circumstances of this case a period of two years from the date of the entry of the (July 20, 1965) decree would be reasonable. Thus, paragraph 6 of the decree is to be so modified.

3. Malcolm claims error in allowing Childs the sum of $400 which the master found ''was earned by Childs on his own time but while in the employment of the trust.'' We do not agree with Malcolm's contention that a fiduciary relationship was created between Childs and Malcolm which precluded Childs from undertaking work on his own time. There was no error in this aspect of the decree.

4. In the case of Childs v. Sherman the final decree is affirmed.

5. In the case of Sherman v. Childs the decree, as modified, is affirmed.

*So ordered.*