ANTHONY P. THOMAS & another[1] *vs*. DAVID T. KIENDZIOR
& another.[2]

No. 88-P-352.

Hampden.   January 18, 1989. — May 25, 1989.

Present: ARMSTRONG, SMITH, & FINE, JJ.

*Rule Against Perpetuities. Contract*, Option, Under seal. *Real Property*,
Option, Boundary.

Where an option for the purchase of land, subject to alternate conditions
precedent, one of which would necessitate exercise of the option, if at
all, within the lives of the sellers or within six months thereafter, and
the other of which possibly would violate the rule against perpetuities,
the option was valid under the common law "wait and see" principle
applicable to alternate conditions, as well as under the "second-look"
statute, G. L. c. 184A, § 1. [372-373]

In an action seeking a declaration that an option given by the plaintiffs to
purchase certain land was unenforceable, the judge, on the evidence
presented, properly rejected the plaintiffs' contentions that they had
signed the option under duress or with a mistaken understanding of its
import; that the option agreement was without consideration; and that
the description of the property did not sufficiently identify the land to
be conveyed. [374]

CIVIL ACTION commenced in the Superior Court Department
on October 28, 1986.

The case was heard by *William H. Welch*, J.

*Bradford B. Moir* for the defendants.

*John T. Quirk, Jr.*, for the plaintiffs.

ARMSTRONG, J. The plaintiffs, an elderly couple who own
a house, barn, and land on Old Feeding Hills Road in Westfield,
brought this action for a declaration that an option given by
them to the defendants on August 1, 1985, to purchase the

[1] Mabel Kirk Thomas.

[2] Sharon L. Kiendzior.

property, is unenforceable. A judge of the Superior Court rejected the contentions made in the complaint that the plaintiffs had signed the option under duress, that its terms were impermissibly vague in describing both the property subject to the option and the time and manner of exercise, and that the option was unenforceable for want of consideration. The judge ruled, however, that the option violated the rule against perpetuities and constituted an unreasonable restraint on alienation of the property. From the ensuing judgment so declaring, the defendants appeal.

The option replaced a purchase and sale agreement executed November 2, 1984, and extended May 1, 1985. The plaintiffs, regretting their decision to sell, prevailed on the defendants to accept instead a right of first refusal, entitling the plaintiffs to remain in possession longer and the defendants to purchase the property at a later date. The document that eventuated was entitled "Option to Purchase" and provided, in relevant part:

> "This option may be accepted by [the defendants] within ninety-nine (99) years from the date of this instrument. This option to purchase is made contingent upon the death of [the plaintiffs] or [the plaintiffs'] decision to vacate premises, at their election, within the above-mentioned ninety-nine (99) years. [The plaintiffs] shall provide [the defendants] six (6) months notice of their decision to vacate. In the event [the defendants do] not purchase the premises within six (6) months of [the plaintiffs'] decision to vacate, this option shall terminate and become null and void."

The option was signed by both the plaintiffs and the defendants, the plaintiffs signing "for ourselves, our heirs, executors and administrators." The consideration to be paid by the defendants, "or their assigns" was to be $85,000, as in the original purchase and sale agreement, subject to adjustment upward for "major capital improvements."

In Massachusetts options to purchase real estate are (at least if not part of a lease) subject to the rule against perpetuities.

*Winsor* v. *Mills*, 157 Mass. 362, 365 (1892). *Eastman Marble Co.* v. *Vermont Marble Co.*, 236 Mass. 138, 153 (1920). *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. 821, 823 and n.4 (1984). Thus, in the *Certified Corp.* case, an ordinary option to purchase real estate, drawn to last for twenty-five years, was held void as a contingent future interest which (if valid) could vest after the expiration of the perpetuities period, i.e., more than twenty-one years after a life or lives in being at the creation of the interest. *Id.* at 823-826. The *Certified Corp.* opinion emphasized that "there was no provision for the duration of this interest to be measured by any life in being at the time of its creation", *id.* at 825, and that the application of the rule was thus unaffected by G. L. c. 184A, § 1, as inserted by St. 1954, c. 641, § 1. This section, known as the "second look" statute, "modifies the rule so as to determine the validity of future interests at the termination of the applicable life estate or lives in being." *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. at 823.

The judge interpreted the option at issue here to mean that the time of its exercise by the defendants or their assigns after the death of the survivor of the plaintiffs was limited only by a ninety-nine year period beginning at the date the option was executed. On this interpretation, unless the plaintiffs during their lives elected to vacate the premises, the perpetuities period could be exceeded by the deaths of both plaintiffs prior to the seventy-eighth year of the option's existence and the exercise of the option by the defendants or their assigns more than twenty-one years thereafter.[3]

---

[3] It may be possible to interpret the option differently: i.e., as requiring that the defendants or their assigns exercise the option within a reasonable time after the death of the survivor of the plaintiffs. This interpretation would not deprive the ninety-nine year period of meaning, as the non-occurrence of either condition during that period would render the option void. It is also possible that the option was intended to expire with the deaths of the buyers, whose "heirs, executors and administrators" (unlike those of the sellers) are not referred to in the option. See, in this connection, *Yentile* v. *Howland*, 26 Mass. App. Ct. 214, 217 (1988), and the case cited, *Childs* v. *Sherman*, 351 Mass. 450, 455 (1966). For reasons that will be apparent later in this opinion, it is not necessary for purposes of the present appeal to determine the correct interpretation of the option language.

It is true that the common law rule against perpetuities would normally strike down a contingent interest if there were a possibility, at the date of the creation of the contingent interest, that it could vest after the expiration of the perpetuities period. The common law recognized an exception, however: that where vesting is subject to alternate conditions precedent, one of which would comply with the rule and the other would not, "the interest in property subject to such alternate conditions precedent does not fail if the condition that in fact occurs is the one that necessarily will occur, if it ever occurs, within the period of the rule." Restatement (Second) of Property, Donative Transfers § 1.4, comment o (1983). This "wait-and-see" principle applicable to alternate conditions has been applied in *Jackson* v. *Phillips*, 14 Allen 539, 572-573 (1867), *Stone* v. *Bradlee*, 183 Mass. 165, 171-172 (1903), *Gray* v. *Whittemore*, 192 Mass. 367, 375 (1906), and *Springfield Safe Deposit & Trust Co.* v. *Ireland*, 268 Mass. 62, 67-68 (1929).

The option at issue here is subject to alternate conditions precedent, one of which, the election by the plaintiffs to vacate the premises, will necessitate exercise of the option, if it is to be exercised at all, within the period of the rule, i.e., within the lives of the plaintiffs or within six months, at most, thereafter. The terms of the option are explicit, that the option will be void if the defendants or their assigns should not exercise it within six months of the plaintiffs' decision to vacate. Under the rule relative to alternate conditions as applied at common law, therefore, it cannot be said at this time that the option given to the defendants must fail for remoteness. The same result would be reached, of course, under the second-look statute, G. L. c. 184A, § 1, which in its text does not distinguish between options and other contingent interests. Cf. *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. at 823. As the option is valid in either event, it is unnecessary to determine at this time whether the application of the rule is governed by the common law or the statute.[4]

---

[4] The sentence in that opinion (at 823) to the effect that the second-look statute has not altered the application of the rule to options to purchase

We see no error in the judge's other rulings. The option agreement, which was under seal, was not void for want of consideration. *Johnson* v. *Norton Housing Authy.*, 375 Mass. 192, 195 (1978). The evidence was not such as to require the judge to find that the plaintiffs signed the option agreement under duress or with a mistaken understanding of its import. The uncertainties in the description of the property in the option agreement are, as the judge ruled, not insuperable, when read with the plan shown as an addendum to the option. One of the deeds seems accurately to describe the bounds of lot 20, the house lot; the uncertainty here seems to be, as best we can decipher it from the plaintiffs' brief in this court and their complaint and closing argument at trial, that the frontage of the lot on Old Feeding Hills Road may be stated as 251 feet on the addendum,[5] while the deeds indicate the frontage of lot 20 as 224 feet. The discrepancy, if there is one, does not affect the identification of the land being conveyed, which is defined on the north by land previously sold off by the plaintiffs and on the south by other land (lot 18) of the plaintiffs included in the option. The triangular portion of lot 18 marked "Gus" on the addendum is, the record suggests, defined by a previous conveyance by the plaintiffs of lot 31. The same is true of the northerly line of lot 19. The other boundaries of that lot appear to be accurately described (as the "third tract") in the 1948 deed from one Gagne to the plaintiffs. The description of the land subject to the option does not include the triangular parcel (shown on the addendum as "T") abutting the northerly boundary of lot 18, if indeed that parcel is still owned by the plaintiffs.

---

realty may (as suggested in the text above) be a reference to ordinary options for a term of years, without measuring lives, which was the situation in the *Certified Corp.* case; or it might be a reference to the fact that the draftsmen of the second-look statute had considered but elected not to recommend an additional section that would have excluded options altogether from the application of the rule. The latter interpretation is supported by the cited authority, Leach, Perpetuities Legislation, Massachusetts Style, 67 Harv. L. Rev. 1349, 1355 (1954).

[5] The addendum is reproduced indistinctly in the appendix to the defendants' brief; the frontage ascribed to lot 20 is illegible.

The judgment is reversed, and a new judgment is to be entered declaring that the option agreement is valid and enforceable.

*So ordered.*