KENNETH H. THOMAS *vs.* WEBSTER SPRING COMPANY,
INC., & another.[1]

No. 93-P-80.

Worcester. February 16, 1994. - August 19, 1994.

Present: KASS, FINE, & GREENBERG, JJ.

*Contract*, Under seal, Assignment, Consideration. *Assignment.*

A Superior Court judge correctly concluded that the parties to an instru-
ment assigning patent rights to an invention "for good and valuable
consideration" contemplated the consideration to be some fair compen-
sation when the invention was marketed [182-183], and, where the as-
signee had failed, for seven years to date, to deliver such consideration,
the assignor was entitled to reassignment to him of the patent [183-
184].

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 12, 1990.

The case was heard by *Herbert F. Travers, Jr.*, J.

*Joan O. Vorster* for the defendants.

*Frank C. Morgan* for the plaintiff.

KASS, J. Kenneth H. Thomas, the plaintiff, invented a
novel bedding spring and on June 12, 1987, executed a
printed form titled "Assignment," whereby he assigned to his
employer, Webster Spring Company, Inc. (Webster), "for
good and valuable consideration" all rights to his invention
and to an application for letters patent to that invention. The
signature block to the instrument of assignment recited that
the signatory had set his "hand and seal," i.e., it was a sealed
instrument. Webster never exploited the invention and did
not pay Thomas anything for it. Thomas brought an action

---

[1]Leggett & Platt, Inc.

against Webster[2] to have the assignment declared null and void or to have Webster pay him damages, including c. 93A damages. The question raised by the case is whether the instrument of assignment implicitly contemplated payment of some kind to Thomas for his invention. A judge of the Superior Court, who heard the case without a jury, decided — we think correctly — that some payment obligation was inherent in the document and the circumstances of its signing.

These, in summary, are the facts found by the judge, which we accept unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Webster is in the business of manufacturing springs which it sells to the bedding trade for incorporation into mattresses and box springs. Thomas's employment at Webster, largely as a machinist, stretched twenty years, from 1969 to 1989, whereupon he retired. In 1987, Thomas, working at home, developed a prototype for a new kind of torsion spring module that would have a longer life and give a mattress and box spring combination a different feel. He showed the prototype to Richard Freedman, the president of the company, who thought the idea was "fabulous" and encouraged Thomas to refine it by producing a one-piece model. This Thomas succeeded in doing over a period of three weeks, working in spare moments in the company machine shop.

On June 12, 1987, Thomas received a call for a 1 P.M. appointment in Freedman's office. Freedman told Thomas that the company wanted to obtain a patent for the new spring module. It would, Freedman said, be in Thomas's best interests to make an assignment of his patent rights in the device and to sign a power of attorney authorizing eight lawyers, all members of a patent firm, to prosecute a patent application for his invention. Freedman said nothing of a coercive nature and Thomas did not feel that his job would be on the line if he did not sign the papers put before him. Thomas did have an expectation that he would be compensated for his invention if it proved itself in the market place. Freedman

---

[2]The action joins as a defendant Leggett & Platt, Inc., which in 1989 acquired Webster.

did not deceive Thomas when he told him it would be in his best interests to assign his patent rights. He meant that the company could best exploit the product and that Thomas would be compensated should the product be profitable.

More than a year later, on October 18, 1988, Webster obtained a patent for the Thomas spring module. In April of 1989, Leggett & Platt, Inc., acquired Webster. To date, neither Webster nor the acquiring parent has sold the product. Although the Thomas spring module has strong potential in the bedding market, the scope of that market, on the basis of the record, was indeterminable and the judge found himself unable to make a reasoned estimate of what profits might be. Accordingly, the judge denied damages. As to the c. 93A claim, the judge thought there had been no unfair or deceptive practice and that no action lies under c. 93A between employee and employer,[3] conclusions that Thomas has accepted, i.e., there was no cross appeal.

In what he labelled an "Order," at the end of a document entitled, typically, "Findings of Facts, Rulings of Law And Order for Judgment," the judge declared that the assignment was valid but that the consideration for it was an undertaking that Webster "would use reasonable efforts to market the spring module and when, and if, profits were derived in the future from said marketing, a fair share of the profits would be paid to the plaintiff Thomas." Judgment was to issue for the defendants "on Count 3(c.93A)." Webster appealed.[4]

What the defendants urge on appeal is that the printed document entitled "Assignment" and containing a preprinted text for assignment of patent rights was a sealed instrument (because of the recital that the assignor had set to it his hand and seal), and that, therefore, consideration was an irrele-

---

[3]See *Manning v. Zuckerman*, 388 Mass. 8, 11-14 (1983), although it is far from obvious that the dispute about the invention is intrinsic to the employment relation between Thomas and Webster.

[4]There follows in the record a "Judgment" which orders that the action be dismissed on the merits, and that the defendants recover their costs. That document is so obviously inconsistent (except for the c. 93A count) with the "order for judgment" and the appeal taken by the defendants that we take it as a clerical error.

vancy. One may accept the continuing vitality of the principle that recitation that an instrument is under seal may in certain instances result in a binding obligation, irrespective of consideration. See *Johnson* v. *Norton Hous. Authy.*, 375 Mass. 192, 194-195 (1978); *Thomas* v. *Kiendzior*, 27 Mass. App. Ct. 370, 374 (1989). The question, however, is not whether the assignment was valid — the judge determined that it was — but what that document means so far as Webster's obligations are concerned. An instrument can be under seal *and* provide for consideration. Indeed, that is often the case. When an instrument under seal promises consideration, failure of consideration can be shown despite the seal. *Quality Fin. Co.* v. *Hurley*, 337 Mass. 150, 151 n.1 (1958). 3 Williston, Contracts § 7:11, at 165 (4th ed. 1992). 1A Corbin, Contracts § 252, at 438 (1963). See *Johnson-Foster Co.* v. *D'Amore Constr. Co.*, 314 Mass. 416, 421 (1943).

Here the instrument of assignment recited that it was made "for good and valuable consideration." The judge found that, taking into account factual context, the valuable consideration that the parties to the assignment had in mind was some fair compensation when the product was marketed. See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973); *Fred S. James & Co.* v. *Hoffman*, 24 Mass. App. Ct. 160, 163-164 (1987); Restatement (Second) of Contracts § 214 (1981). To that degree, the document was "instinct with an obligation." *Wood* v. *Duff-Gordon*, 222 N.Y. 88, 91 (1917). The difficulty we have with the judgment is that it marks no end to the dispute. When must the defendants launch a campaign to make a market for the Thomas module? What is a fair royalty? The parties are doomed to one or more rounds of dispute. An appropriate remedy, in light of the failure of the defendants to deliver the consideration they were determined to have promised, is to absolve Thomas of his countervailing promise, the assignment of the patent. See *Petrangelo* v. *Pollard*, 356 Mass. 696, 701-702 (1970); *Ward* v. *American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-101 (1983); Restatement (Second) of Contracts § 237 (1981). Inartistically, Thomas asked in his complaint that

the assignment be declared null and void. That request for relief may be read as seeking reassignment of the patent. It is a form of relief which has the virtue of ending the litigation definitively and enabling Thomas to determine, through his efforts, what is the value, if any, of the patent to his spring module.

The judgment is reversed and a new judgment is to enter that the defendants shall assign to the plaintiff Thomas their interest in the patent to the Thomas spring module, and that the action is dismissed with respect to the plaintiff's c. 93A claim.

*So ordered.*