Fabricant, J.
INTRODUCTION
This action arises from an agreement, made in 1969, granting owners of abutting property on Martha’s Vineyard reciprocal rights of first refusal to purchase each other’s land at a fixed price under certain circumstances, and containing other provisions regarding interests in and use of the land. Through multiple counts asserted in the amended complaint and in the counterclaim, the parties dispute the validity and interpretation of the agreement. In a memorandum of decision and order dated February 3, 1999, this Court granted summary judgment in favor of the Cohans on those counts of the amended complaint and counterclaim that raise the validity of the agreement [9 Mass. L. Rptr. 437]. Subsequently, in a memorandum of decision dated July 26, 1999, this Court granted summary judgment in favor of the Wallaces on certain counts of the counterclaim that allege breach of the agreement in connection with certain transactions among entities controlled by the Wallaces. Presently before the Court are motions by both sides for reconsideration of those decisions. For the reasons that will be explained, both motions will be denied.
PROCEDURAL HISTORY
The Wallaces filed the present declaratory judgment action on December 31, 1996, to determine the validity of the rights of first refusal contained in paragraph 5 of the agreement. The amended complaint, dated October 28, 1997, seeks in count I a declaration that the right of first refusal is void and unenforceable as an unreasonable restraint on alienation. Count II seeks a declaration that the agreement is void and unenforceable because it violates the common law rule against perpetuities. In their amended answer and counterclaim, dated February 17, 1998, the Cohans denied that the agreement violates the rule against perpetuities but asserted as an affirmative defense that if it does, they are entitled to reformation under the present perpetuities statute, G.L.c. 184A, §6(b), or alternatively, under the doctrine of mutual mistake. In count VII of their counterclaim, the Cohans sought a declaration that the agreement is valid and enforceable.
On August 31, 1998, the parties served cross-motions for summary judgment on the issue of the validity of the right of first refusal.[4] The Wallaces’ August 31, 1998, motion and supporting memorandum argued that the right of first refusal was invalid as an unreasonable restraint on alienation, based on the factors prescribed in the First and Second Restatements. The Wallaces’ motion papers made reference to the rule against perpetuities only in the context of discussing the duration of the restraint as a factor bearing on reasonableness. They argued that the duration of the restraint weighed against reasonableness because it exceeded the time permitted by the rule under the common law, but they made no independent argument that the restraint was invalid as in violation of the rule. The Cohans, in their simultaneous cross-motion and supporting memorandum, addressed the perpetuities issue as raised in the complaint, arguing that the agreement complies with the rule against perpetuities and, in any event, could be reformed.
Thereafter, the parties served oppositions to each others’ motions, responding to the arguments presented. The Cohans, in response to the Wallaces’ reference to the rule as a measure of the reasonableness of the duration of the restraint, pointed out the ninety-year maximum set by the legislature in section 1 of Chapter 184A. The Wallaces, in their opposition to the Cohans’ motion, further discussed the issue of reasonableness, but did not argue that the agreement violates the rule against perpetuities, or that it violates any statute.
This Court heard lengthy arguments on the cross-motions in December of 1998[5] In a memorandum of decision dated February 3, 1999, this Court concluded that the rights of first refusal contained in the agreement were not void as an unreasonable restraint on alienation, and on that basis denied the Wallaces’ *423 motion and granted the Cohans’ motion [9 Mass. L. Rptr. 437]. The Court did not address any issues regarding conformity of the agreement to the rule against perpetuities because the Wallaces had not argued the rule as a basis for their challenge to the agreement. The Court’s memorandum made reference to the rule, at p. 10, only as part of its evaluation of the duration of the agreement as one factor in the Restatement analysis. In that context, the Court noted the ninety year limit under the current statutory rule as weighing in favor of the forty-year duration of the agreement.[6]
After that decision, the case was scheduled for trial on the remaining counterclaims. Shortly before the trial date, however, the Wallaces, represented by new counsel, sought leave to file a late motion for summary judgment as to certain of the remaining claims, contending that undisputed facts dictate an interpretation of the agreement that would obviate the need for trial on those claims. The Court granted such leave, over strenuous objection,[7] and set a briefing schedule for the motion prior to the scheduled trial. On July 26, 1999, after briefing and argument, the Court issued a memorandum of decision ruling as a matter of law that the agreement permitted the Wallaces to transfer land among the various legal entities in which they held one hundred percent of the beneficial interest, without triggering the right of first refusal. On that basis, the Court granted the Wallaces’ motion for summary judgment as to Counts I, V, and VIII of the Cohans’ counterclaim.
Soon thereafter, the Wallaces indicated their intention to move for reconsideration of the Court’s February 1999 decision, based on the rule against perpetuities. On August 23, 1999, pursuant to an agreed scheduling order, both sides submitted the present motions for reconsideration, with supporting materials. The Wallaces’ motion argues that the agreement violates the common law rule against perpetuities, that it cannot be saved by application of section 6(b) of the present perpetuities statute, c. 184A, and that the Court erred in its previous evaluation of the reasonableness of the agreement as a restraint on alienation, particularly in light of the thirty year limit on options in gross provided by c. 184A, §5(a). In a reply memorandum in response to the Cohans’ opposition, the Wallaces added an additional theory, asserted for the first time, that the right of first refusal is void under G.L.c. 184, §§26-30, as a use restriction exceeding thirty years.
The Cohans’ motion for reconsideration argues that the Court’s July 1999 decision misconstrued the agreement, failing to give its terms their usual and ordinary meaning, and adopting an interpretation inconsistent with its language and purpose and with evidence of the parties’ intent.
I. THE WALLACES’ MOTION FOR RECONSIDERATION
The Wallaces now ask this Court to declare the right of first refusal void on a ground they did not raise either in their original motion for summary judgment, or in response to the Cohans’ cross-motion. One of their present arguments, based on G.L.c. 184, §§26-30, they did not raise even in their motion for reconsideration, but assert for the first time in their reply to the Cohans’ opposition to that motion. By their failure to argue these theories during the summary judgment proceedings, the Wallaces have waived them, and are not now entitled to have them considered. Commonwealth v. Gilday, 409 Mass. 45, 46 n. 3 (1991) (“A motion for reconsideration is not an appropriate place to raise new arguments inspired by a loss before the motion judge”); see King v. Globe Newspaper Co., 400 Mass. 705, 707, cert. den., 485 U.S. 940 (1987), quoting Peterson v. Hopson, 306 Mass. 597, 599 (1940) (judge has “no duty to reconsider” and “should hesitate to undo his own work”); compare Publisher’s Resource, Inc. v. Walker-Davis Publications, 762 F.2d 557, 561 (7th Cir. 1985) (motion for reconsideration not occasion to assert new legal theories for first time).
Although the Court has discretion to entertain these new arguments at this time, the Wallaces present no basis for the exercise of that discretion. At the time of the original summary judgment proceedings, the Wallaces were represented by able counsel, who had ample opportunity to submit comprehensive written and oral argument. Counsel certainly knew of the rule against perpetuities issue, having asserted it in the amended complaint. It can only be inferred that the Wallaces, through counsel, made an informed decision to proceed on the arguments they considered their strongest, and to forego others they judged less compelling. Accordingly the Court denies the Wallaces’ motion on the ground of waiver.
Even if the Court were to consider the arguments the Wallaces now present on their merits, it would deny the motion. A general point that was alluded to in this Court’s February 1999 memorandum of decision bears strongly on the Wallaces’ present arguments for invalidation of the agreement. As noted in the February 1999 memorandum at pp. 13-14, the law strongly favors enforcement of contracts. The plaintiffs here are not distant heirs of some long-deceased testator, burdened by constraints imposed under the circumstances of a prior era. Rather, the Wallaces seek to invalidate an instrument they themselves[8] entered into voluntarily, with advice of sophisticated counsel, based on their own evaluation of its burdens and benefits, under circumstances that have changed only insofar as they themselves have chosen to change them. In comparable contexts, courts have given heavy emphasis to the value of contract, and have employed all available means to avoid “enabling [par *424 ties] to escape the enforcement of a contract they entered into freely and knowledgeably.” Peterson v. Tremain, 35 Mass.App.Ct. 422, 426 (1993).
A second overall point, also alluded to in this Court’s February 1999 memorandum of decision, at pp. 11-12, deserves note. The Wallaces’ present arguments rest generally on the proposition that public policy favors development of land, and accordingly prohibits restraints that tend to inhibit development. Although many of the authorities cited in regard to the rule against perpetuities contain general statements to that effect, this Court is not persuaded that that policy is as strong or as universally applicable as the Wallaces contend. As the Wallaces have acknowledged, and as the Supreme Judicial Court has recognized, development of the particular land in issue here presents substantial risks as well as potential benefits to the public interest. See Johnson v. Edgartown, 425 Mass. 117, 124 (1997). In reviewing the authorities on which the Wallaces rely, this Court discerns a different, and perhaps broader, policy: that decisions either for or against development of land should be under the control of persons who have a present and continuing stake in the land in issue. That policy, while certainly hostile to enforcement of restraints on present owners imposed long ago by remote transferors, and at least in tension with long-term options held by strangers to the land in issue, is not offended by enforcement of a contractual undertaking between persons who at all relevant times were and continue to be owners of abutting property.
These points, together with this Court’s previous assessment of the reasonableness of the agreement, dictate its enforcement unless such enforcement is unequivocally barred by governing law. The Wallaces’ arguments do not demonstrate that it is.
The crux of the Wallaces’ present position is that the right of first refusal violates the rule against per-petuities because it gives a future interest in the land to “issue” of the named parties, and spouses of such issue, who might have been born after the date of the agreement, and whose interests might have vested more than twenty-one years after the death of all the individuals named. See generally, Certified Corp. v. GTE Products Corp., 392 Mass. 821, 823-25 (1984); Thomas v. Kiendzior, 27 Mass.App.Ct. 370, 373 (1989). The Cohans concede that, if “issue” is read to include descendants not yet born as of the date of the agreement, then the scenario posed was theoretically possible, although highly unlikely, as of that time. It is undisputed that the scenario posed did not in fact occur, and it cannot occur during the remaining ten years of the agreement, since six of the eight individuals named in the agreement are still living.
The word “issue” is usually, but not always, construed in the way the Wallaces propose. See Lockwood v. Adamson, 409 Mass. 325, 328 (1991) (in will context, “we ordinarily will construe ‘issue’ to include all lineal descendants . . . unless we discern a testamentary purpose to the contrary”); 70 C.J.S., Perpetuities §32 (1987) (“A limitation or gift over to issue does not offend the rule against perpetuities where the context or surrounding circumstances show that the word ‘issue’ is used in a limited sense as meaning issue living at a date within the period specified by the rule”).
The usual touchstone of contract interpretation, of course, is the intent of the parties. To the limited extent that the facts available evidence any pertinent intent, they tend to support the Wallaces’ interpretation; it appears to be undisputed that, as of the time of the agreement, Benjamin and Hildegaard Cohan had adult children and grandchildren, and no reason appears that they would not have anticipated the possibility of additional grandchildren, or that they would have wanted to provide for some of their grandchildren but not others. Moreover, the Wallaces point out, and the Cohans do not dispute, that each of the younger Cohans, the Aldeborghs, and the Wallaces have made conveyances to or for the benefit of after-born grandchildren, without first offering to sell to the other side, apparently on the assumption that those grandchildren were “issue” within the meaning of that term as it appears in the clauses of paragraph 5(a) of the agreement that list the permissible transferees. It seems at least unlikely that the parties to the agreement intended “issue” to have different meanings in different clauses of the same paragraph.
Intent on the particular point, however, is not the only factor bearing on interpretation. Where reasonable alternative interpretations exist, one of which would invalidate the agreement under the rule against perpetuities and one of which would not, the Court is bound to adopt the latter. See Warner v. Whitman, 353 Mass. 468, 471 (1968); Childs v. Sherman, 351 Mass. 450, 455 (1966), Gray v. Whittemore, 192 Mass. 367, 379 (1906); Fisher v. Fisher, 23 Mass.App.Ct. 205, 207 n. 5 (1986). This principle of interpretation serves the parties’ overriding intent that the agreement be enforceable. Massachusetts Courts have applied this principle particularly in situations where the facts known as of the time of the litigation establish that the impermissibly remote vesting did not actually occur. E.g. Warner v. Whitman, 353 Mass. at 471 (interpreting trust in light of facts “as they actually existed” at end of measuring life, noting legislative policy, as expressed in prospective statute, authorizing look back approach); Peterson v. Tremain, 35 Mass.App.Ct. at 426 (construing agreement as limiting option to “reasonable” time; no need to determine length of reasonable period “in light of the fact that the buyer has in fact exercised it at his earliest opportunity”).
Here, alternative interpretations of “issue,” as used in the clause identifying required offerees, do exist, one of which presents a perpetuities problem, and one of which solves the problem. Although, as noted supra, the former alternative seems more likely the one actu *425 ally intended by the parties, the latter is reasonable and not inconsistent with the language employed. The Court would therefore adopt that latter interpretation, reading “issue” as used in reference to required offer-ees as limited to those who were lives in being as of the date of the agreement, so as to avoid invalidating the agreement under the rule.
Moreover, even if the problem were not solved by interpretation under the common law doctrine, it would be solved by reformation under current statutory authority. Chapter 184A, §6(b) provides:
If a nonvested property interest or a power of appointment was created before the effective date of this chapter and is determined in a judicial proceeding, commenced on or after the effective date of this chapter, to violate the commonwealth’s rule against perpetuities as that rule existed before the effective date of this chapter, a court upon the petition of an interested person may reform the disposition in the manner that most closely approximates the transferor’s manifested plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created.
The Wallaces argue that this provision applies only to interests arising from donative transfers. They base this argument on the use of the phrase “plan of distribution,” which commonly appears in reference to donative transfers. See, e.g., Mazzola v. Myers, 363 Mass. 625, 630 (1973); Strange v. Powers, 358 Mass. 126, 127 (1970); Brayton v. Stoughton, 335 Mass. 321, 324 (1957). The term “transferor,” however, undermines the argument; had the legislature meant to include only donative transfers, the word “donor” would have been more apt. Moreover, the express language of §4 excluding non-donative transactions from the application of § 1 demonstrates the legislature’s ability to distinguish between donative and non-donative transfers, and to express its intention to exclude one category in plain terms, when it chose to do so. The absence of any such express exclusion in reference to §6 precludes the interpretation the Wallaces advocate.[9] See also Craig v. Campedelli, Land Court No. 6117-S, July 20, 1992 (Cauchon, C.J.) (applying c. 184A, §6(b) to an option to purchase land contained in an easement). Compare Peterson v. Tremain, 35 Mass.App.Ct. at 423-24 n. 1 (suggesting that §6(b) might have applied to an option, created by contract, if suit had been brought after the statute’s effective date). Accordingly, even if this Court were to construe “issue” as the Wallaces propose, and on that basis were to rule that the agreement violates the rule against perpetuities, it would reform the agreement, pursuant to G.L.c. 184A, §6(b), so as to limit the term “issue,” as used in reference to the required offerees, to descendants of the elder Cohans who were alive in 1969. As so reformed, the agreement would be valid under the common law rule against perpetuities.
The Wallaces urge this Court to reconsider its conclusion that the right of first refusal is not an unreasonable restraint on the alienation of property. They focus particularly on the Court’s evaluation of the forty-year length of the agreement as one factor in the reasonableness analysis under the Restatement, and the Court’s statement, at p. 9 of its February 1999 memorandum, that case law establishes no generally applicable time limit. They assert that Massachusetts cases do establish a time limit on options, prohibiting options exceeding twenty-one years. They rely on Certified Corp. v. GTE Products, Corp., 392 Mass. at 825 (25-year option invalid); Roberts v. Jones, 307 Mass. 504, 507-08 (1940) (option of indefinite duration invalid); Eastman Marble Co. v. Vermont Marble Co., 236 Mass. 138, 152-53 (1920) (25-year option invalid). In each of these cases, however, the Court held the option invalid under the common law rule against perpetuities. None of these cases, and no other case cited, holds that an option not violative of that rule would nevertheless be an unreasonable restraint on alienation solely by virtue of a term exceeding twenty-one years, regardless of other factors.
The Wallaces also rely on c. 184A, §5(a), which provides:
An option in gross with respect to an interest in land or minerals or a preemptive right in the nature of a right of first refusal in gross with respect to an interest in land or minerals becomes invalid if it is not exercised within thirty years after its creation.
Conceding that the statute is not retroactive, and is therefore not directly applicable to this agreement, the Wallaces nevertheless argue that §5(a) expresses a legislative judgment that thirty years is the longest time an option in gross can be reasonable. Compare Warner v. Whitman, 353 Mass. 468, 472 (1968) (applying, as guide to interpretation of instrument, policy expressed in earlier version of c. 184A, §1, although statute not directly applicable). Based on that asserted legislative policy, along with their characterization of the right of first refusal in issue here as an option in gross because it is not appurtenant to a lease, they contend that its forty year duration compels the conclusion that it is unreasonable, regardless of other factors.
The Cohans’ response to this argument focuses on their contention that this is not an option in gross, because it is “annexed to another document,” Certified Corp. v. GTE Products Corp., 392 Mass. at 824, in that it is a part of the overall transaction under which the parties came to be owners of abutting property, as well as holders of easements and other rights in each other’s land. The case law identified by the parties leaves considerable uncertainty as to when, if ever, an option not appurtenant to a lease can be other than *426 “in gross.” See, e.g., Id. at 823-24 n.5 (option that is part of lease not subject to rule against perpetuities); Eastman Marble Co. v. Vermont Marble Co., 236 Mass. at 156 (applying rule against perpetuities to option not contained in lease); Peterson v. Tremain, 35 Mass.App.Ct. at 426 n. 2 (suggesting option adjunct to sale of abutting commercial property would be subject to §5(a) of c. 184A); Thomas v. Kiendzior, 27 Mass.App.Ct. at 371 (noting options not part of lease are subject to rule against perpetuities); Exxon Corp. v. McManus, Middlesex Sup.Ct. No. 96-5734, Mar. 11, 1997, 7 Mass. L. Rptr. 202 (Botsford, J.) at 5 (equating options contained in leases with “options appurtenant”); Craig v. Campedelli, Land Court No. 6117-S, July 20, 1992 (Cauchon, C.J.) (defining option appurtenant as option contained in lease).
If it were necessary to resolve this debate, the Court would be inclined to do so in favor of the Cohans’ position, based on their status as owners of abutting land, as discussed at pp. 7-8, supra. Like a lessor, whose stake in the land and its future makes inapplicable the policy reasons underlying time limits on options in gross, the Cohans have a direct and continuing interest in whether and how the Wallaces’ land is used and developed. They are not strangers to the land, as the holder of an option in gross may be, but are directly affected by its condition. Thus their interest, like that of a lessor, takes them outside the legislative policy expressed in §5(a). Cf Schwartzman v. Schoening, 41 Mass.App.Ct. 220, 223 (1996) (construing easement as attaching to condominium unit, rather than to owner of unit, based on “presumption favoring appurtenant easements as distinguished from personal easements (easements in gross)”).
Even if the agreement were viewed as creating an option in gross, however, the Court would reject the Wallaces’ contention as to the implication of §5(a) for the evaluation of reasonableness, for a different reason. The Wallaces’ proposed use of §5 (a) would, in effect, make that provision of the statute retroactive, in direct contravention of the legislative dictate that the statute apply only to instruments created after its effective date. In providing for prospective application only, the legislature acknowledged the protection the law accords to expectations based in contract. As discussed in this Court’s February 1999 memorandum, that protection weighs heavily in evaluation of the reasonableness of this agreement. Even if the statute were considered to dictate a determination that the forty year duration weighs against reasonableness, the balance of factors would remain on the side of enforcement.
The Wallaces’ final argument is the one raised first in their reply memorandum, that G.L.c, 184, §§26-30, limit enforcement of the agreement to thirty years. Under §26 of c. 184, the cited provisions apply to:
all restrictions on the use of land or construction thereon which run with the land subject thereto and are imposed by covenant, agreement, or otherwise, whether or not stated in the form of a condition, in any deed, will or other instrument executed by or on behalf of the owner of the land . . .
The right of first refusal is not a “restriction on the use of land.” See Labounty v. Vickers, 352 Mass. 337, 347 (1967) (“ ‘restriction of the use of land’ is a right to compel the person entitled to possession not to use it in specified ways”); Myers v. Salin, 13 Mass.App.Ct. 127, 133-34 (1982). Nor does the right of first refusal “run with the land.” A covenant runs with the land when its benefit or obligation passes with ownership of the land irrespective of the consent of the subsequent parties. See 21 C.J.S., Covenants §25 (1990); Howard J. Alperin & Lawrence D. Shubow, Summary of Basic Law §17.83, at 659 (1996); see generally Gallison v. Downing, 244 Mass. 33, 36 (1923) (covenant that did not run with land could not be enforced by subsequent grantee). The right of first refusal, by the plain terms of the agreement, benefits only specified people, identified by name or by relationship to those named, and only so long as those people remain owners of abutting land containing dwelling houses; it grants no rights to, and imposes no burdens on, anyone else who might come to own the land. The catch-all language contained in the second to last paragraph of the agreement, stating that “(t]he provisions of this Agreement shall run with the land except where they are stated to be personal in nature . . .” cannot trump the plain meaning of the provision in issue. See 21 C.J.S., Covenants §26 (1990) (parties’ intent with respect to whether covenant binds heirs and assigns to be determined from deed as a whole and surrounding circumstances); compare Restatement (First) of Property §487, cmt. d (1936) (parties may provide for continuation of easement only while dominant tenement remains owned by described person).
Although the right of first refusal provision does not fall within the description of G.L.c. 184, §26, it appears that the use restriction contained in the first part of paragraph 5 of the agreement may. By the term of the agreement, the use restriction expires either on the earlier of the date specified or when no member of the Cohan family continues to own any of the land or to maintain a dwelling house on it. Thus, it could occur, within the forty-year term, that a stranger to the agreement might acquire some part of the land governed by it, the required offers to sell having been made and declined, while a Cohan family member still owns and maintains a dwelling house on some part of the original Cohan land. In that event, the remaining Cohan would be entitled to enforce the use restriction against the stranger until the end of its term, even though that person had not consented to the original agreement.
*427 If the use restriction runs with the land, then its enforceability after thirty years (that is, for the ten years remaining under the agreement beginning this month), depends on whether it was imposed as part of a “common scheme” applicable to four or more contiguous parcels.[10] The language of the restriction, read in isolation, seems to suggest that it was, in that it appears to grant equal rights of enforcement-to all owners of all the affected land. See G.L.c. 184, §26(5) (restriction “may be deemed imposed as part of a common scheme if. . . each owner is entitled to enforce the restrictions against the other parcels”).[11] The circumstances of the agreement, however, strongly suggest otherwise. It is undisputed that the agreement was entered into in the context of the Wallaces’ purchase of land from the elder Cohans, in order to facilitate that purchase, and that in that context the members of the two families negotiated with each other as two distinct units; nothing in the surrounding circumstances suggests that the members of the Cohan family had any purpose to obtain enforceable rights among themselves. See Harrod v. Rigelhaupt, 1 Mass.App.Ct. 376, 382 (1973) (existence of common scheme depends on intent).
In any event, the “common scheme” issue, and the consequences that flow from it, are beyond the scope of the present motion for reconsideration. The February 1999 decision, of which reconsideration is sought, addressed the use restriction of the first part of paragraph 5 of the agreement only in connection with the Cohans’ motion for summary judgment as to liability on count IV of their counterclaim, which alleged breach of that provision by rental use of the Wallaces’ property in the years 1996 through 1998, within the first thirty years of the agreement. In granting that motion, the Court made no determination of enforceability of the use restriction for the period after January 1, 2000; to the contrary, the Court noted the existence of equitable reasons that would weigh against specific enforcement by means of injunctive relief. The arguments the Wallaces now advance, if accepted by the Court, would provide an additional reason for denial of injunctive relief, but would not undermine any ruling already made.
fl. THE COHANS’ MOTION FOR RECONSIDERATION
The Cohans seek reconsideration of the Court’s July 26, 1999, decision concluding that the Wallaces did not violate their obligations under paragraph 5(a) of the Agreement by transferring land to various legal entities in which they held 100% of the beneficial interest. With the sole exception of a newly offered affidavit of Janet Aldeborgh, the Cohans present neither arguments nor evidentiary materials not previously considered. Having reviewed all materials submitted in connection with this motion, the Court concludes that no ground appears for reconsideration of its earlier decision.[12]
The affidavit of Janet Aldeborgh asserts, in substance, that when she signed the 1969 Agreement, she understood it to preclude transfers to anyone other than the natural persons named. As the Wallaces point out, the affidavit is untimely; the Cohans had full opportunity to present any affidavits or other materials they chose at the time of the Court’s consideration of the Wallaces’ summary judgment motion. The Wal-laces move to strike the affidavit on this ground. Although that relief would be justified, in exercising its discretion the Court is mindful that it permitted the Wallaces to file their motion for summary judgment late, and has thereafter permitted both sides to file multiple supplemental and post-hearing submissions of various kinds. In this context, it is difficult to characterize this particular untimely submission as more egregious than the others in this case. Accordingly, the Court denies the motion to strike.
More substantively, the affidavit, when considered in light of Aldeborgh’s deposition testimony, adds nothing material to the analysis. In her deposition, Aldeborgh denied having had any involvement in the negotiation of the agreement, any contemporaneous discussion with anyone about the restrictions included in it, any awareness of their purpose or intended effect, or any knowledge of the manner in which the Wallace interests were taking title. Asked about the reference in the agreement to the Jenkins Point Trust, Aldeborgh answered that “I assumed that our lawyers, having accepted it, that it was all right to sign,” and further that she did not “recall having any objection at that time” to the Wallaces’ ownership through that entity. For purposes of summary judgment, Aldeborgh is bound by her deposition testimony, and cannot create a dispute of material fact by contradicting it. E.g. Morrell v. Presóse Engineering, Inc., 36 Mass.App.Ct. 935, 937 (1994). Read consistently with that testimony, the affidavit must be understood as asserting nothing more than her own unilateral, subjective understanding, without basis in any negotiations or discussions with anyone, and without support in the facts of the transaction as they were known or available to her at that time.[13] Such an understanding, even of a party to the agreement, cannot outweigh the factors discussed in this Court’s previous ruling.
ORDER
For the foregoing reasons, it is hereby ORDERED that: The Plaintiffs’ Motion for Reconsideration of the Court’s Memorandum of Decision Dated February 3, 1999, is DENIED; The Counterclaim and Third-Party Plaintiffs’ Motion for Reconsideration is DENIED; and the Plaintiffs’ Motion to Strike the Affidavit of Janet Aldeborgh is DENIED.

The Wallaces' motion referred only to count I of their amended complaint, but the Cohans’ cross-motion invoked count VII of the counterclaim, thereby encompassing the legal issues regarding validity of the agreement that the Wallaces had raised in both of counts I and II.

The argument was not recorded. It is the Court’s recollection that, upon specific inquiry, counsel for the Wallaces responded to the effect that the Wallaces invoked the rule against perpetuities not as a ground of their challenge to the agreement, but only as measure of the reasonableness of its duration for purposes of the application of the Restatement factors.

In this respect, the Wallaces’ present motion misconstrues this Court’s memorandum, asserting as a ground for reconsideration that the Court erroneously applied section one of the current statute, despite its non-retroactivity.

The Cohans’ objections focused on the untimeliness of the motion and the likelihood that it would delay the scheduled trial, for which they had invested effort and expense in preparing. They did not suggest that they lacked any information needed to present a complete response to the motion.

That is, through their trustee, in exactly the same manner as they now participate in this litigation.

Unlike the Massachusetts statute in issue here, the Indiana statute construed in Buck v. Banks, 668 N.E.2d 1259, 1261 (Ind. App. 1996), on which the Wallaces rely, expressly excludes non-donative transfers from the entire chapter in which both the statutory rule against perpetuities and the reformation provision appear. I. C. 32-1-4.5-2, sec. 2 (1991) (“This Chapter . . . does not apply to ... a nonvesting property interest or a power of appointment arising out of a nondonative transfer . . .”).

If it was not, certain recording requirements nevertheless apply pursuant to G.L.c. 184, §27(b)(2). The record presently before the Court does not establish whether those requirements have been met.

 There appears to be no dispute that the restriction applies to at least four contiguous parcels.

The Court notes that, with respect to the issue of the effect of the trust form on verifiability of compliance with the agreement, the discussion at pp. 12-13 of the Wallaces’ Opposition to the Cohans’ Motion for Reconsideration accurately reflects the analysis expressed in the Court’s July 26, 1999 memorandum.

Aldeborgh’s asserted understanding appears also to be m direct conflict with the express terms of the agreement; she asserts that she believed she could not transfer to her sister, but the agreement explicitly permits the members of the Cohan family to transfer to any “issue” of her parents, the elder Cohans.

Also pending are a motion by the Cohans to compel production of documents, and a motion by the Wallaces to strike an affidavit offered in support of the Cohans’ motion for reconsideration. After argument on these motions, counsel conferred further on the issues raised in the motion to compel and then reported to the clerk that they have resolved those issues. Accordingly, the Court takes no action on that motion. The motion to strike will be addressed in part II of this memorandum.